### WM. GRAFFENSTEIN V. E. EPSTEIN & CO.

CONTRACT, *When Not Avoided by Misrepresentation.* A misrepresentation as to the market price of an article of general commerce, made falsely and fraudulently by one party to induce a sale, and relied upon by the other, will not avoid a contract therefor, when there are no circumstances making it the special duty of the one party to communicate the knowledge he possesses, and none giving him peculiar means of ascertaining such market price.

### Error from Lyon District Court.

*E. Epstein & Co.* sued *Graffenstein* for damages, for the alleged breach of a written contract for the sale of certain wool. The facts are sufficiently set forth ·in the opinion. At the September Term, 1879, of the district court, the plaintiffs had judgment against the defendant, who brings the case here.

*Gillett & Forde,* for plaintiff in error. (No brief on file for reporter.)

*Scott & Lynn,* for defendants in error:

1. It appears to us that not one of the cases cited and relied upon by the plaintiff in error, sustains his view, nor is any one of them, in our judgment, analogous to the case at bar.

2. The contract of sale sought to be avoided in this case is one in reference to a commodity that is bought and sold every day during the proper season. As in the case of corn, wheat, hogs, and cattle, all men have the same "ordinary and accessible means of information" as to its price or market value, and therefore no man has the right to rely upon the representations which one party may make upon that subject. Trade and business cannot be hampered in order that men should be protected against their own folly, or from the results of ignorance about those things which all men of ordinary sense and vigilance ought to know. We are not discussing the question of morals. The law must draw the line somewhere, and it "does not go to the romantic length of

giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information." (2 Kent's Com. 484, 485.) See also 2 Parsons on Cont. (5th ed.) 773; *Foley v. Cowgill,* 5 Blackf. 18; 10 Ind. 485; Chitty on Cont. 681; 3 Bulstr. 94; 2 Bibb, 602; 5 Hill, 69; 5 Johns. 354; 6 Paige, 256; 6 Metc. (Mass.) 260; 63 Me. 12.

The opinion of the court was delivered by

BREWER, J.: Plaintiffs sued defendant for a breach of the following contract:

"EMPORIA, May 26, 1879.

"I have sold this day to E. Epstein & Co. my wool (1,100 fleeces), at 20 cents per pound, to be delivered at Emporia. Received ten dollars on contract.     WM. GRAFFENSTEIN."

One ground of defense was as follows:

"3d.   For a third defense, defendant says that at the date, to wit, May, 1879, the plaintiffs came to the premises of defendant, and contracted to purchase some wool of defendant at the price of twenty cents per pound, and at the time falsely and fraudulently represented that said price was higher than the market price, they well knowing to the contrary—which representations defendant, not knowing the market price thereof at that time, relied on and agreed to let them have it at that price; but plaintiffs were wool-buyers at the time, and had been long before, and the fact was that wool had at that time largely advanced, and said sum was much less than the market price, and plaintiffs well knew it at the time; that as soon as defendant discovered the fraud, he declined and refused to comply with the said contract."

Upon the trial, defendant offered testimony in support of this count in the answer, but the court ruled that the testimony was inadmissible, and this ruling is the error alleged. Counsel for plaintiff in error fairly state the question thus presented to be, "Whether a false and fraudulent representation as to the market price of a commodity made by a purchaser who knows, to a seller who does not know, the market price, to induce a sale more advantageous to the purchaser than he could otherwise get, and which representation is be-

lieved and relied on by the seller to his damage, is such a fraudulent representation as avoids his contract of sale?"

This question thus presented must be answered in the negative. It will be noticed that, as stated, the question eliminates two elements which sometimes enter in to affect the force of the misrepresentation, *i. e.*, that of some personal trust or confidential relation, and that of peculiar means of knowledge. Sometimes there are such relations between the parties, or their situations are such, that a peculiar obligation rests on the one who knows to reveal his knowledge. There may be some trust relation between the two, or a recognized habit of dealing in dependence upon the party's statements and representations. In such cases, there is a peculiar duty resting upon the party to disclose the true facts. A confidential adviser, an attorney, a factor, an agent, all hold such relations that they are under special duty to tell the truth, the whole truth, and nothing but the truth. So, where from a long-continued course of dealing the party making the representations knows that the other has become accustomed to act upon his representations, he may not presume upon such confidence to impose a falsehood. So, also, where there are peculiar means of knowledge possessed by one and not open to the other, as where a dealer in precious stones trades with one inexperienced and ignorant of the values of such articles. Acquaintance with such values, or the tests of quality, is not acquired at once, or by the mere asking; it requires training and time. So if a dealer knows that a party is confined to his room by injury or disease, and compelled to depend on the information brought to him — and indeed, generally, where the parties cannot, by reasonable care and diligence, place themselves upon equal terms, the law casts a higher obligation to reveal the truth.

None of these elements enter into this case. The article was one of general commerce; there was no special relation of trust or confidence; no peculiar training was prerequisite to a knowledge of values; the market price was a matter of public knowledge, and could be ascertained by any one by

reasonable effort and inquiry. Under such circumstances, if the one party chooses to take the statements of the other, and act upon them, rather than make any inquiry as to the market price, he cannot thereafter repudiate his contract on account of the falsity of the statements. "It must appear that the injured party not only did in fact rely upon the fraudulent statement, but had a right to rely upon it in the full belief of its truth, for otherwise it was his own fault or folly, and he cannot ask of the law to relieve him from the consequences." (2 Parsons on Conts., 3d ed., p. 270.)

Counsel argue in favor of the rule as they claim it, that it will tend to promote honesty in business transactions, and encourage the confidence which one man should have in another in the statements he makes. It may well be doubted whether, as a matter of public policy, such a rule would be wise; whether it is not better that every one should understand that it is his duty to make reasonable and ordinary effort to acquaint himself with all the facts necessary for his guidance in making a contract before he makes it, and that if he fails to make such effort, he must abide by the contract. Attention to business and prudence in making contracts are of no small importance; inquiry before is vastly better than inquiry after. A disposition, after entering into a contract which proves unfavorable, to search for some means of getting out of it, is unfortunate; it encourages misconstruction of statements, misrecollection of words, and willful falsehood. A party who finds on inquiry that he cannot avoid his contract, except by proof of misrepresentations by the other party, is under fully as strong temptation to impute such misrepresentations, as a party seeking a contract is to make them.

But it is scarcely necessary to pursue this question of policy further. We think the law is the other way, and any change in the rule must be made by the legislature. Counsel refer us to no authorities which come squarely up to the rule they contend for. They refer us to four which they claim tend that way. In *Ellis v. Andrew*, 56 N. Y. 83, there is an

expression in the opinion of the court which seems to coun-
tenance this claim, but the expression is *obiter*, and the de-
cision in the case in no manner sustains them. In that case,
there was simply a false statement as to the value of the prop-
erty sold, and it was held that this would not sustain an ac-
tion of fraud by the purchaser, who relied on this statement.
In *Davis v. Jackson*, 23 Ind. 233, the misrepresentation con-
sisted in this, that the seller stated that a stock of goods,
about which he knew, while the purchaser did not know,
would invoice $3,500, when it only invoiced $1,500. An
invoice was requested before the purchase, but the seller ex-
cused himself therefrom, on the ground of a lack of time.
That the court did not intend to depart from their former
rulings, hereafter to be noticed, is evident from the fact that
they say, that when the term value was used, the jury must
have understood it as referring to the amount of goods, rather
than the prices. In *Lord v. French*, 61 Me. 420, the seller
agreed to sell a stock of goods at the Boston prices of similar
goods at that date, but fraudulently made out a bill with
prices above the Boston prices some $500, which the pur-
chaser, in ignorance of the fraud, paid for, and then sued, and
obtained judgment. On the other hand, in a later case,
(*Bishop v. Small*, 63 Me. 12,) the same court held that an ac-
tion of deceit will not lie upon a seller's false representations,
either as to what a patent right cost him, or at what price he
had sold territory rights therefor, or upon his statements
as to its merits or prospective profits. The exact question
was ruled upon in Indiana, where the supreme court held
"That misrepresentations by one contracting party to the
other, as to the value or quantity of a commodity in market,
when correct information on the subject is equally within the
power of both parties, with equal diligence, do not, in con-
templation of law, constitute fraud. (*Foley v. Cowgill*, 5
Blackf. 18.) And this rule is followed by that court in
*Cronk v. Cole*, 10 Ind. 485, where it was decided "that it
cannot be said that the market value of a commodity is pe-
culiarly within the knowledge of one person more than an-

other, as the channels of information are equally open to all; and a party to a contract of sale of a marketable commodity has no right to rely upon the representations of the other party touching the market value of that commodity." And in support of these views the court cites Chitty on Cont., p. 681, and the following cases : *Bailey v. Merrill*, 3 Bulstr. 94; *Moore v. Turbeville*, 2 Bibb, 602, and others there referred to. See also 2 Kent's Com. 486, and cases cited. And in the latter work we find this statement of the course of decision :

"The cases have gone so far as to hold, that if the seller should even falsely affirm that a particular sum had been bid by others for the property, by which means the purchaser was induced to buy and was deceived as to the value, no relief was to be afforded; for the buyer should have informed himself from proper sources of the value, and it was his own folly to repose on such assertions made by a person whose interest might so readily prompt him to invest the property with exaggerated value. *Emptor emit quam minimo potest; venditor vendit quam maximo potest.*"

We see no error in the ruling, and the judgment will be affirmed.

All the Justices concurring.