No. 19,923.

C. F. SUBKE, *Appellee*, v. M. D. GONDER, *Appellant*.

SYLLABUS BY THE COURT.

PRINCIPAL AND AGENT — *Exchange of Land — Opinion of Agent as to Values—False Representation*. Under the facts stated in the opinion it is held that a statement of the value per acre of a ranch, made to a principal by an agent who was an intermediary to effect an exchange of land, was an expression of opinion upon which an action for false representation could not be predicated.

Appeal from Gray district court; GORDON L. FINLEY, judge; LITTLETON M. DAY, judge. Opinion filed March 11, 1916. Reversed.

*Frank L. Martin,* and *Van M. Martin,* both of Hutchinson, for the appellant.

*Lester Luther,* of Cimarron, and *H. O. Trinkle,* of Garden City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a principal against his agent for damages for false representations which induced an exchange of real estate. The plaintiff recovered and the defendant appeals.

The plaintiff was the owner of a tract of land in Gray county consisting of 1084 acres. This land was worth $14,000, and was subject to a mortgage which, with accrued interest, amounted to about $7500. The defendant effected a trade of the Gray county land for all but ten acres of the Kilworth ranch situated near the city of Lawrence. The Kilworth ranch consisted of 842 acres, well improved and well arranged and adapted for ranch purposes. It embraced sufficient bottom land to carry the stock, timber enough to support the ranch, pasture land and hay land. Between 200 and 300 acres were in cultivation and 20 acres in alfalfa. There were three sets of improvements on the ranch. There were three well-built frame dwelling houses, having respectively five, six and seven rooms, two of the houses having porches. There were one granary, 16 x 20 feet, with sheds attached, another granary

about ten feet square, a corncrib holding 1200 bushels of corn, with a grinding machine, and another small corncrib. There were sheds for hogs at three different places, one for 500 head, one for 50 head, and one for 30 head. There were sheds for 600 head of goats, and a cow shed with a place for hay, 20 x 40 feet. There were six chicken houses and a cement dipping tank. There were three barns, one 30 x 40 feet, shedded all around by cow sheds and stanchions, one 28 x 40 feet for horses, implements and hay, and one 42 x 84 feet, three stories high. The large barn was modern in every respect, containing a hay carrier, a litter carrier, a feed carrier, pitless scales, feed chutes of various kinds, box stalls, bins for various kinds of grain, an inside crib holding 1000 bushels of corn, and room for 500 tons of hay. There was a gravity system of waterworks watering sixteen different places on the ranch, irrigating a garden and supplying the large barn and the dipping tank. There were about 300 acres under hog-tight fence.

There was no cash market for the plaintiff's land or for the ranch. In negotations between the plaintiff's agent and Kilworth's agent, the plaintiff's land was priced at $30 per acre and the ranch was priced at $85 per acre. The plaintiff and the defendant went to Lawrence and inspected the ranch. The plaintiff was a farmer with twenty-two years' experience in farming in Illinois and Missouri. He had handled stock, was familiar with the kind of land which composed the ranch, and he spent four hours' time in making a fairly complete inspection of the ranch, except the timbered portion which was rough and poor land. At first Kilworth asked $45,000 and the Gray county land for the ranch. By the defendant's effort the price above the Gray county land was reduced to $40,000, and the trade was closed on that basis. Kilworth gave the plaintiff a deed for 160 acres, worth $8000, and a contract for the remainder of the ranch, which allowed the plaintiff twenty years time in which to pay the $40,000. The plaintiff gave the defendant a mortgage on the deeded part of the ranch to secure his commission, which was computed on the basis of $1.50 per acre for the plaintiff's land, and one-half the reduction which the plaintiff secured in the price of the ranch, a total of $4366. After concluding the negotiations, the plaintiff returned to his home, explained to

his family the terms of the trade, and his wife signed the necessary papers understanding what had been done. When the plaintiff was at the ranch Kilworth inquired respecting the plaintiff's ability to handle it. The plaintiff said he had a married son and a son-in-law who, with the plaintiff's family, which included unmarried sons, could occupy the three sets of improvements, and that he could command something like $4000 to be used in providing stock, teams, and implements. Before the trade was finally consummated Kilworth went to Gray county and inspected the plaintiff's land. The plaintiff secured permission to remain on his own land until March 1, following the trade, and he never returned to the ranch he had purchased. A few months after receiving his contract he traded it off for a farm in Iowa which did not belong to the man with whom he traded.

The defendant's employment was in writing. The contract was dated February 28, 1912, covered a variety of subjects, provided for a commission of $1.50 per acre in case of an exchange, and contained the following provision:

"It is understood that M. D. Gonder is a real estate broker and that in all cases of exchange the owner shall decide for himself and act upon his own judgment in making the exchange and that Gonder may receive and collect a commission from both parties to the exchange."

After the defendant had secured terms on the Kilworth ranch, and on April 24, the day he and the plaintiff started for Lawrence, a further contract was made providing that if the exchange with Kilworth were effected the plaintiff should receive for his services $1.50 per acre for the plaintiff's land and one-half the sum saved should a reduction in the price of the ranch be obtained. This contract also provided how the defendant's commission should be secured.

The petition rested the defendant's employment on the contract of February 28 and treated the contract of April 24 as providing for additional compensation. It was alleged that the plaintiff's land was worth $30 per acre while the Kilworth ranch was worth only $35 per acre, although represented to be worth $85 per acre, and that the plaintiff agreed to the exchange because of the false representations of the defendant. The prayer was for actual damages resulting from squandering the Gray county land, for punitive damages, and for re-

Subke v. Gonder.

covery of the commission paid the defendant. The false representations charged were of two classes: representations relating to the value of the Kilworth ranch and representations which prevented the plaintiff from exercising his own judgment and led him to trust the defendant implicitly and to rely entirely upon the defendant. Representations of the first class were that the Kilworth ranch was priced to the defendant at $85 per acre and that it was worth that sum; that after a pretended interview with Kilworth the defendant represented he had secured a reduction in price to $77 per acre; and that the plaintiff was getting a good deal for the ranch at that price. Representations of the second class were that if the defendant were allowed to do all the talking he could get a reduction in price; that if the plaintiff talked with the tenants on the ranch about buying it or about the value of it they would get mad and leave; that if the defendant were allowed to do all the talking he would make a good deal for the plaintiff; that the defendant was going to make the best deal possible for the plaintiff; and that the plaintiff should trust the defendant's judgment.

The general verdict, by specific recitals, allowed the plaintiff no damages except the commission which the plaintiff had paid. The following special findings of fact were returned:

"1. Did plaintiff inspect the land and express himself as being satisfied with the quality and price before he signed the papers? Answer. Yes.

"2. Did plaintiff consent for the defendant to price his land in the trade at a price in excess of its real value? Answer. Yes.

"3. Did plaintiff express the opinion that the land he traded off was not worth $10.00 per acre, after he had made the trade? Answer. No.

"4. Did Hemphill, as agent for Kilworth, price the land to Gonder at the price of $75,000.00? Answer. Yes.

"5. What was the reasonable cash value of the 160 acres of land Kilworth conveyed to Subke free of incumbrance? Answer. $8000.00.

"6. Do you find that Gonder was guilty of any fraud that requires him to forfeit his commission? Answer. Yes.

"7. If you answer the last question, 'yes,' state what such fraud was. Answer. Misrepresentation of facts concerning the value of Douglas County lands.

"8. What was the fair cash value of the Gray County land at the time of the trade? Answer. $14,000.00.

"9. Did Subke price his Gray County land in the trade at $30.00 per acre? Answer. He did.

27—97 KAN.

"10. Did Kilworth, at first upon the day when all the parties inspected the land, ask $45,000.00 for his land above the equity of Subke in his Gray County land? Answer. Yes."

The subject of damages resulting from the difference between the actual value of the Kilworth ranch and its represented value, or the difference in value between the plaintiff's land and the Kilworth ranch, is entirely eliminated by the verdict, which expressly limited recovery to the commission paid the defendant. The subject of false representations made to establish a special relation of trust and confidence between the plaintiff and the defendant and to induce the plaintiff to surrender his own judgment and place himself at the mercy of the defendant is eliminated by findings numbered 6 and 7. There is left for consideration unfaithfulness of the defendant in bringing about the trade, which unfaithfulness consisted solely in misrepresenting facts concerning the value of the Kilworth ranch.

The alleged misrepresentations relating to the value of the ranch have been stated. The jury found the ranch was priced to the defendant at $75,000, or more than $85 per acre, and that subject is eliminated. On the date of the trade Kilworth asked $45,000 for the ranch above the plaintiff's equity in the Gray county land. This price was reduced to $40,000. The plaintiff priced his land at a trading value of $30 per acre, which price he authorized the defendant to use and which he knew was more than his land was worth. On the basis of $30 per acre, the plaintiff's equity in the Gray county land was $25,020. There were 842 acres in the Kilworth ranch. Before signing the contract Kilworth expressed regret at giving up a little fenced tract of ten acres on which stood a long cabin which he and his wife occupied for outings. The plaintiff said that Kilworth might keep the cabin, and the enclosed tract on which it stood was excepted from the contract. The price for the ranch was, therefore, $77.22 per acre and because prices and values were understood to be and were in fact trading prices and values the defendant's representation that he had secured a reduction in price to $77 per acre was substantially true. The statement that the plaintiff was getting a good deal on the ranch at $77 per acre was confirmed by the verdict of the jury, which allowed no damages for financial loss occasioned by the exchange.

There remains as the sole basis of the verdict and judgment the statement that the Kilworth ranch was worth $85 per acre, the plaintiff having testified that while he and the defendant were on the train going to Lawrence to inspect the ranch the defendant said it was worth $85 per acre. Ordinarily a statement of this kind is purely a matter of opinion which is not to be accepted and relied on as a statement of fact. There is no absolute standard by which to determine the value of a ranch like the Kilworth ranch. The elements to be considered are so numerous and so varied that landowners and real-estate men, acting according to their best judgment, would likely differ greatly in their estimates of value, as indeed they did in this instance. Purchasers understand that the best foot will be put forward and that high and even extravagant values will likely be placed on property offered to them, and so are not deceived. (*Graffenstein v. Epstein & Co.,* 23 Kan. 443; *Burns v. Mahannah,* 39 Kan. 87, 17 Pac. 319; *Speed v. Hollingsworth,* 54 Kan. 436, 441, 38 Pac. 496; *Elerick v. Reid,* 54 Kan. 579, 38 Pac. 814; *Sowers v. Parker,* 59 Kan. 12, 51 Pac. 888; *Else v. Freeman,* 72 Kan. 666, 83 Pac. 409; *Circle v. Potter,* 83 Kan. 363, 369, 111 Pac. 479; *Herrald v. Paris,* 89 Kan. 131, 132, 130 Pac. 684; *Woods v. Nicholas,* 92 Kan. 258, 261, 140 Pac. 862; *Ross v. Cox,* 93 Kan. 338, 144 Pac. 227.)

Speaking generally, the relation between principal and agent is confidential. Its essence is fidelity, and whenever the principal has the right to receive the agent's opinion it must be an opinion fairly justified by the facts. In such cases a statement of opinion is regarded in the light of a statement of fact, and a charge of false representation may be predicated on a false and unwarranted statement of value the same as upon a false statement regarding topography, the character of improvements, the amount of rent received, and the like.

In the present case the contract of employment constituted the defendant a mere broker to bring the plaintiff and Kilworth together, and expressly imposed upon the plaintiff the duty to decide for himself and act upon his own judgment. Of course an agent may not contract for exemption from liability for a breach of duty, but he may insist upon a clear delimitation of his duty, and it is not against public policy to require a principal to rely upon his own investigation and judgment.

"Attention to business and prudence in making contracts are of no small importance; inquiry before is vastly better than inquiry after. A disposition, after entering into a contract which proves unfavorable, to search for some means of getting out of it, is unfortunate; it encourages misconstruction of statements, misrecollection of words, and willful falsehood. A party who finds on inquiry that he can not avoid his contract, except by proof of misrepresentations by the other party, is under fully as strong temptation to impute such misrepresentations, as a party seeking a contract is to make them." (*Graffenstein v. Epstein & Co.*, 23 Kan. 443, 446.)

When a principal has expressly undertaken to act upon his own judgment, his agent, who is an intermediary only, may well understand that he is responsible for the truth of all facts which he may state for his principal's information; but he is not apprised that he guarantees the literal acuracy of an estimate of value, which can be nothing more than an opinion, and an opinion upon a matter concerning which the best informed will likely differ widely. If an agent on the ground value property for his principal who resides at a distance and is not familiar with conditions, he understands that responsibility is rested upon him to decide the question of value and he accepts the responsibility. But the contract of employment under consideration imposed no duty upon the defendant to determine the value of the Kilworth ranch and state the result to the plaintiff as a basis upon which the plaintiff might rest his decision to trade or not to trade.

It is suggested in the brief that the contract of February 28 was superseded by the contract of April 24. The theory of the petition, however, was that the contract of April 24 was merely supplemental, and indeed it modified nothing contained in the earlier contract except the amount of compensation, and added a provision relating to the manner in which compensation should be secured. The petition undertook to present a change of the relation created by the contract by showing that the defendant subsequently prevented the plaintiff from exercising his own judgment and caused the plaintiff to relinquish his own judgment, but the jury were not impressed with the proof. There is no charge in the petition and no evidence that after the contracts were executed the plaintiff undertook to impose upon the defendant the responsibility of deciding and reporting what the market value of the Kilworth ranch

was, and the clear effect of the evidence was that the defendant's estimate of value was not given or received as an estimate of cash market value but as a comparative estimate for trading purposes. The plaintiff proceeded to Lawrence and inspected the property offered him after hearing the defendant's statement of its value. The plaintiff testified that nobody prevented him from going anywhere he desired to go or from seeing anything he wished to see. The jury found that he did inspect the land and that before the papers were signed he expressed himself as satisfied not merely with the price but with the quality, concerning which the defendant made no false statements or representations. The plaintiff voluntarily gave back to Kilworth ten acres of the ranch. The defendant's statement that the ranch was worth $85 per acre probably did not control the plaintiff's judgment. However this may be, it was a mere expression of opinion and not a statement of fact, and, under all the circumstances, did not belong in the category of those opinions upon which a charge of false representation may be based.

Since the defendant's liability must rest upon findings numbered 6 and 7, and since they are insufficient to sustain liability, the plaintiff failed to establish the cause of action stated in the petition and the judgment should have been for the defendant.

It appears that an execution has been issued on the judgment and a sale of property has been made to the plaintiff, who has not paid even the costs. This sale should be set aside.

The judgment of the district court is reversed and the cause is remanded with direction to set aside the sale referred to and render judgment for the defendant.