No. 20,463.

## W. S. GRIESA and J. FRANK JONES, Partners, etc., *Appellants*, v. DAVID THOMAS, *Appellee*.

### SYLLABUS BY THE COURT.

1. SALE—*Motion for Judgment on Findings Denied—No Error.* Special findings of fact concerning a contract for the purchase of *speciosa* catalpa seedlings examined, and held that plaintiffs' motion for judgment thereon was properly denied.

2. SALE—*Fraudulent Representations by Seller Proven—Instructions.* It is needless to examine a trial court's instructions to the jury touching the measure of damages for breach of contract when a defense of misrepresentation and fraud in procuring the contract is successfully maintained and no damages are recoverable.

3. SALE—*Catalpa Seedlings—Purchaser No Opportunity to Read Contract—False Statements by Vendor—Evidence—Instructions.* Where one of the defenses to a written contract for the purchase of catalpa seedlings was that the defendant did not have a fair opportunity to read the contract, it was not error to permit oral testimony that the vendor had assured the vendee that the latter would have the privilege of countermanding the order, where the jury were carefully instructed that the terms of the written contract were binding on the defendant unless the jury found that he did not have a fair opportunity to read it before he signed it.

4. SALE—*Parol Evidence—Admissible to Show Fraud in Procuring Written Contract.* The ordinary rule that a written contract speaks for itself and that parol evidence to show the oral statements, representations and negotiations of the parties which led up to the contract is inadmissible has no application to written contracts procured by the fraudulent representations of one of the parties and which were relied upon by the other.

5. SALE—*When False Representations as to Market Value Amount to Fraud.* The rule that representations as to the market value of an article or commodity are mere expressions of opinion and not statements of fact is limited in its application to familiar articles and commodities of commerce whose market value is easily ascertainable; and does not apply to sales of articles or commodities whose market value is difficult of determination, especially when such articles or commodities are offered for sale by a vendor who is familiar with their true worth and real market value to a vendee who is entirely ignorant thereof and who buys in reliance on the vendor's positive statements concerning the market value.

6. SALE—*Market Value—Instructions.* Instructions covering the question whether representations as to market value were positive statements of fact or mere expressions of opinion examined and approved.

Appeal from Harvey district court; FRANK F. PRIGG, judge. Opinion filed December 9, 1916. Affirmed.

*M. A. Gorrill, Henry H. Asher,* both of Lawrence, *W. H. von der Heiden,* and *Ashton E. Morgan,* both of Newton, for the appellants.

*Ezra Branine,* and *Harry W. Hart,* both of Newton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs sued the defendant for the contract price of certain catalpa seedlings. The contract was in the form of a printed and written order and signed by the defendant. In the body of the text, in prominent capitals and above the defendant's signature, were the words, "I AGREE THAT THIS ORDER IS NOT SUBJECT TO COUNTERMAND." On the margin, in plain type, it was printed:

"Our Agents are not authorized to vary from the printed terms hereof. Read the notice at the bottom of this blank."

At the bottom of the blank, following the schedule of trees and seedlings ordered, was the following:

"The signer is notified that agents are not authorized to promise to plant stock, collect pay for orders in advance, to promise time or privilege of countermanding.

"Read terms of Contract.

"POSITIVELY NO COUNTERMANDS ACCEPTED OR CONDITIONAL ORDERS TAKEN."

The seedling stock was shipped to defendant. He refused to accept, and as the stock was perishable it was advertised and sold by plaintiffs at auction for a nominal sum, and the plaintiffs' action is for the difference between the contract price and the sum realized by the sale plus necessary and pertinent expenses.

The defendant's answer alleged that prior to signing the order it was expressly agreed between him and plaintiffs' general agent that the order would be subject to countermand and cancellation by notifying the plaintiffs at any time before the trees were actually shipped; that defendant relied wholly upon plaintiffs' agent to write and prepare the order, and that he had no opportunity to read the order, and that defendant signed the order relying wholly upon these statements of

plaintiffs' agent and upon the agreement between him and the agent.

The answer also alleged:

"4th.  That about the time of the signing of said order and prior thereto and subsequent thereto said plaintiff and its agent were engaged in a general plan and scheme to cheat and defraud parties throughout the State of Kansas by false and fraudulent representations and as a part of such plan said agent made false and fraudulent representations that the prices for which said plaintiff was offering these for sale was an exceedingly low price and was much lower than such trees could be bought or purchased for at any nursery or any market in the United States and plaintiff's agent pretended to have a letter direct from plaintiffs which he purported to read from to the effect that said agent was not authorized to sell such trees after the end of that week for less than seven cents each and that when plaintiff advanced its price that said trees would be two cents cheaper than like or similar trees could be bought or purchased at any nursery or at any place in the United States.  That yearling *speciosa* catalpas would in three years develop into fence posts and in five years to telephone poles and in seven years to telegraph poles and railroad ties.  That it would be necessary for said defendant to order five thousand in order to get one thousand inasmuch as plaintiff did not have sufficient catalpas with which to fill all orders.  That plaintiff did no jobbing business and that they procured catalpa seed and raised all the stock at or near the City of Lawrence.  That plaintiff's agent had just purchased a half section of land in Ford county, Kansas, and that he intended to and was going to plant the whole of same in catalpa trees.

"5th.  That all of said statements and representations were false and untrue and fraudulently made and that in truth and in fact the regular market price of yearling *speciosa* catalpas such as plaintiff's agent was selling and such as plaintiff shipped was from five to eight dollars per thousand and that plaintiff had a large stock and could fill defendant's order for five thousand trees, that it would take said catalpas six to eight years to mature to fence posts and fifteen years to mature to telephone poles and eighteen to twenty years to mature railroad ties or telegraph poles, and that plaintiff did not grow all its trees at or near Lawrence, Kansas, and that plaintiff's agent did not have or purchase the half section of land in Ford County, Kansas, for the purpose of planting catalpa trees, and that said letter that said agent claimed to have and read from was false and fraudulent and fictitious and after selling said trees to said defendant, said agent continued to sell trees at the same price and that said agent read from said letter for the purpose of inducing defendant to purchase said trees then and there.

"6th.  That said defendant has never had or grown any catalpas and was not familiar with the length of time it would take same to mature as aforesaid and did not know nor was familiar with the market price

or the reasonable price of same and that he relied implicitly upon such said representations.

"7th. That afterward, when defendant ,learned that said statements were false and fraudulent and acting in accordance with said contract, defendant notified said plaintiff not to ship said trees on September 23rd, 1914, contermanded and cancelled said order."

The cause was tried to a jury and a general verdict rendered for defendant. Certain special questions propounded by plaintiff were answered:

"Question 7. . . . State whether or not at the time of signing said order any misrepresentations in regard to said nursery stock were made to said defendant by A. L. Dye?  Answer. Yes.

"Question 8. If you answer the last question in the affirmative, then state fully what such misrepresentations were?  Answer. As to time it takes to grow fence posts, telephone and telegraph poles."

Also certain questions submitted by defendant:

"No. 1. Did the plaintiff's agent represent to the defendant that yearling-*speciosa* catalpas could not be bought for less than $20 per thousand?  Answer 1. Yes.

"No. 2. . . . Did the plaintiffs' agent know that *speciosa* seedlings could be obtained for less than $20 per thousand?  Answer 2. Yes.

"No. 3. . . . Did not the plaintiffs' agent know that *speciosa* seedlings could be obtained in the market for less than $20 per thousand? Answer 3. Yes.

"No. 4. Did plaintiffs' agent make false misrepresentations to the defendant as to the value of yearling *speciosa* catalpas?  Answer 4. Yes.

"No. 5. Did plaintiffs' agent make false representations to defendant as to the length of time *speciosa* catalpa seedlings would develop into a size so that the same could be cut and used for a fence post, a telephone pole, or telegraph pole?  Answer 5. Yes.

"Q. 6. . . . Did defendant rely upon said false representations in the signing of said order?  Answer 6. Yes.

"Q. 7. Did the defendant have personal opportunity to examine or read the order in question?  Answer 7. Yes."

Considering the principal errors assigned in the order of their presentation, it does not seem that the plaintiffs were entitled to judgment on the special findings. True, the question whether defendant had a fair opportunity to sign the order was answered in plaintiffs' favor, but another good and sufficient defense—that of fraud and misrepresentation—was pleaded and apparently proved. It is elementary that a contract entered into through the fraud and misrepresentation of one of the parties and relied on by the other is voidable at the

Griesa v. Thomas.

instance of the party defrauded.    (*Hart v. Haynes,* 96 Kan. 262, 150 Pac. 530.)

Plaintiffs' next complaint relates to the court's instructions touching the measure of damages and of the jury's special finding of market value of catalpa seedlings at Halstead, where the defendant resided.   Unless some way is disclosed to overcome the findings of fraud and misrepresentation, these alleged errors are inconsequential.   So, too, is the error urged as to the admission of oral evidence touching the privilege of countermanding the order.   Counsel for plaintiffs are entirely correct in their contention that such evidence is ordinarily incompetent, since the plain terms of the contract were to the contrary, and they were not subject to oral contradiction unless indeed another controverted question in the case—defendant's opportunity to read the contract—had been resolved in defendant's favor.   But the question whether defendant had a fair opportunity to read the contract was itself an issue, and the trial court could not anticipate the jury's finding concerning it, and therefore, it was not improper to admit the oral testimony as to the privilege of countermanding the order, when the court carefully guarded, as it did, the rights of plaintiffs in appropriate instructions.   (4 Wigmore on Evidence, § 2430.)   The instruction, in part, reads:

"On the other hand, if you believe that the defendant was not induced to sign said order by reason of the said false and fraudulent statements of plaintiffs' agent preventing the defendant from having a fair opportunity to read the said order and you believe that defendant did not read or hear said order read before delivering and that said order was accepted by the plaintiffs before the defendant gave notice of countermanding or cancellation of said order, then the order and acceptance would become a binding contract and the defendant would be bound by all the terms and conditions of said written order and defendant would have notice of the limitation of the agent's authority as contained in said order and notice of the statement in said order that no countermand would be accepted or conditional orders taken; and under the conditions above stated the defendant could not countermand his order after it had been accepted by the plaintiffs and defendant would be liable," etc.

However dogmatically the rule is stated and reiterated in the decisions and textbooks that parol evidence is inadmissible to show the oral representations, negotiations and statements of contracting parties, leading up to their bargain,

when later their contract is reduced to writing and signed by them, an invariable qualification of that rule is usually appended making an exception in all cases of fraud pleaded and proved. (*Willard v. Ostrander,* 46 Kan. 591, 26 Pac. 1017; *McMullen v. Carson,* 48 Kan. 263, syl. ¶ 2, 29 Pac. 317; 4 Wigmore on Evidence, § 2439.)

Nor would it be proper to hold that the representations and statements of the plaintiffs' agent were mere "puffing," or "dealer's talk," or expressions of opinion. The defendant was a farmer having neither knowledge nor experience in the growth of catalpa trees, and he might be expected to give entire credence to the statements of plaintiffs' agent touching the market value and quick-growing qualities of catalpa, and to enter into a bargain with him on such representations and only because of his reliance on them. This observation is particularly true touching the agent's representations as to the market price. Since the defendant had no knowledge of *speciosa* catalpa nor its market price, and its value or market price was not readily ascertainable, the plaintiffs' agent was bound to tell him the truth about this matter within his peculiar knowledge, if he volunteered to tell defendant anything whatever about it.

While the rule is that statements of value or market price of familiar commercial commodities, like grain, wool and the like, are ordinarily mere matters of opinion (*Graffenstein v. Epstein & Co.,* 23 Kan. 443; *Burns v. Mahannah,* 39 Kan. 87, 17 Pac. 319; 12 R. C. L. 281), yet the rule is otherwise where the value or market price is difficult of ascertainment, and where the vendor is familiar with such value and the vendee is not. Where an unfamiliar kind of property is involved and the market value is not easily ascertained, representations as to its market value are usually considered statements of fact and not of opinion. And where a vendor knowingly and grossly misrepresents the true market value of such a commodity, and the purchaser is entirely ignorant of it and is induced to buy in reliance upon the vendor's false statements as to its market value, the vendee may have a cause of action or a defense based thereon. (*Murray v. Tolman,* 162 Ill. 417; *Kilgore v. Bruce,* 166 Mass. 136; *Picard v. McCormick,* 11 Mich. 68; *Maxted v. Fowler,* 94 Mich. 106, 109; *Stoll v. Wellborn,* [N. J. Ch. 1903] 56 Atl. 894; *Conlan v. Roemer,* 52 N.

Griesa v. Thomas.

J. Law, 53; *Bacon v. Frisbie,* 22 N. Y. Supr. Ct. 26; 20 Cyc. 52, 53. See, also, Note, 35 L. R. A. 426-429.)

In *Graffenstein v. Epstein & Co.,* supra, Mr. Justice Brewer, speaking for this court, recognized that the ordinary rule did not apply where the market value was not readily determinable. It was there said:

"So, also, where there are peculiar means of knowledge possessed by one and not open to the other, as where a dealer in precious stones trades with one inexperienced and ignorant of the values of such articles. Acquaintance with such values, or the tests of quality, is not acquired at once, or by the mere asking; it requires training and time. . . . and, indeed, generally, where the parties can not, by reasonable care and diligence, place themselves upon equal terms, the law casts a higher obligation to reveal the truth." (p. 445.)

Again, in *Speed v. Hollingsworth,* 54 Kan. 436, 38 Pac. 496, this court said:

"We are referred by the attorney of plaintiff below to *Graffenstein v. Epstein,* 23 Kan. 443, and *Burns v. Mahannah,* 39 Kan. 87, as supporting the judgment rendered. In those cases the misrepresentations concerned the market price of an article of general commerce. The market price was a matter of public knowledge. But in both of those cases it was observed, that 'there were no circumstances making it the special duty of the seller to communicate the knowledge he possessed to the purchaser, and none giving him peculiar means of ascertaining the market price of the article sold.' We have no disposition to extend the rule declared in those cases, and prefer to limit them to the facts disclosed therein." (p. 441.)

The rule that positive statements of value are mere "puffing," or the lying talk in which dealers may indulge with impunity in their transactions with ignorant persons, is one which is subject to criticism, and is not universally followed. At all events, courts should steadily set their faces against the extension of its application. In a plain case of cheating, swindling, or gross duplicity, the rule of *caveat emptor* should have no application. (*Nairn v. Ewalt,* 51 Kan. 355, 32 Pac. 1110.)

This feature of the case was sufficiently covered by the instructions:

"10. The jury are instructed that if you believe from all the evidence that the market price of catalpa trees is a matter of public knowledge or could be ascertained by any one by reasonable effort and inquiry, then any false statements by the plaintiffs' agent as to the market price would not be sufficient to avoid the plaintiffs' contract, provided it was signed with a full opportunity to know its contents. . . . But if you believe

from the evidence that the market price of such catalpa trees was not a matter of public knowledge or could not be ascertained by reasonable effort and inquiry . . . then in that event the defendant would not be bound by said written order, etc.

"11. The jury are instructed that false representations, in order to constitute a defense to a contract, must be statements as to past or existing facts and not merely statements of opinion or as to something to happen in the future, and any such statements of opinion or false statements of something to happen in the future are for the purpose only of showing circumstances to be considered by the jury for whatever they think they are worth as to the question of whether or not the plaintiffs' agent made false representations to the defendant upon which defendant relied and which prevented defendant from having a full and fair opportunity to read said order."

Since we have seen that the false representations as to the market value were sufficient to avoid this contract, we need not enter the more debatable inquiry as to whether the false representations as to the quick-growing qualities of the catalpa seedlings were likewise statements of fact on which the vendee having no knowledge of catalpa might rely, or whether they were mere expressions of opinion, excusable as "puffing" or "dealer's talk." On the main point already covered it is clear that the plaintiffs can not prevail.

Counsel for plaintiffs conclude with a pessimistic and gloomy horoscope of the future if business men can not enforce written contracts according to their terms. But we are bound by the findings of fact. From the time of Cicero until now it has been the law that fraud vitiates contracts—vitiates everything it touches, and through its perpetration no one acquires a right of action. *"Nemo ex proprio dolo consequitur actionem."* However reputable a business firm the plaintiffs may be, the jury have found that their agent procured the defendant's signature and assent to this contract through fraud and misrepresentation, and as no prejudicial error is disclosed, the judgment is affirmed.