No. 25,986.

G. C. DEARDORFF, *Appellant*, v. W. W. COONS and R. G. JACOBS, Partners, etc., *Appellees*.

SYLLABUS BY THE COURT.

BROKERS — *Creation of Agency — Evidence—Fraud.* The proceedings considered, and *held,* the evidence established the relation of principal and agent between a landowner and a firm of real-estate agents, and fraud on the part of the agents.

Appeal from Meade district court; LITTLETON M. DAY, judge. Opinion filed June 6, 1925. Reversed.

*Frank S. Sullivan,* of Meade, for the appellant.

*G. W. Sawyer, John C. King,* both of Liberal, and *H. Llewelyn Jones,* of Meade, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by a principal to recover from his agents profits fraudulently made by the agents in dealing with the subject of the agency. A demurrer to plaintiff's evidence was

sustained. He appeals, and the substantial question is whether there was any evidence that the relation of principal and agent existed.

Plaintiff, who lived at St. John, owned land in Meade county. Defendants were real-estate agents at Plains. On November 28, 1918, plaintiff wrote and mailed to defendants a postal card, which they received, and which reads as follows:

"St. John, Kan., 11/28/1918.

"Sirs—In regard to price on S. ½ 9-32-31 will take 8000 for it or 3000 for NW 10 terms to suit buyer at 8% ¼ of all crops go. This includes a Com. of 5 and 2-½. 175 A in wheat.

Resp., G. C. Deardorff, St. John, Ks."

"Sub to prior sale."

What induced the sending of the communication does not appear, and interpretation of it was a matter of law for the court. It was clearly an offer to sell land, and defendants were at liberty to buy on their own account if they so desired. The communication stated, however, that the price included a specified commission. The communication was one relating to sale of land; the commission obviously related to that subject; and besides containing an offer to sell for a price, the communication contained an open offer to pay a commission for bringing about a sale.

The communication was addressed to a firm of real-estate brokers, and, so far as the landowner was concerned, was sufficient to constitute what in the real-estate business is called "listing" the land with the brokers for sale. Something more, however, was required to consummate the relation of principal and agent. It was necessary for the brokers to accept the appointment. Defendants might have thrown the card in the wastebasket, or might have placed it on file for future reference, or might have done a number of other things, without meeting the owner's advance toward agency. On the other hand, defendants could accept the appointment, and by so doing create the nexus of agency. There is no formula for acceptance unless a particular mode be specified. One method of acceptance is to act on the tendered appointment; and acceptance may be proved by any kind of competent and relevant evidence. The result is, the question in the case reduces to whether or not defendants accepted plaintiff's tender of appointment to act as his agents in finding a purchaser for the land.

On December 20, 1918, A. C. Stice, of Cabool, Mo., went to Plains for the purpose of buying land. Defendants showed him

Deardorff v. Coons.

several tracts, including plaintiff's land, and on December 21 Stice contracted with defendants to purchase the land for $9,600. The contract was in writing, and portions of it are significant:

"This contract, made and entered into this 21st day of December, 1918, by and between Coons & Jacobs, of Plains, Kansas, as agents of the owner, of the first part, and A. C. Stice, of Cabool, county of Texas, state of Missouri, of the second part, witnesseth:   .   .   .

"It is further understood by the parties hereto that this contract is entered into subject to the approval of the present owner, within 30 days from date of contract."

The final paragraph was inserted because defendants told Stice the owner of the land lived in the East, and his approval of the contract was necessary. The "present owner" was the plaintiff.

On the evening of December 21, 1918, Stice returned to his home. On January 15, 1919, defendants wrote Stice a letter, which reads as follows:

"This is to inform you that since the change of interest rate from 7% to 8% on the deferred payment in contract for the purchase on the S. ½ 9-32-31 Seward Co., Kansas, the owner of this land has confirmed this sale to you as per the terms of contract. You may attach this letter to your contract, as it becomes a part thereof. We received your letter authorizing the change in interest rate and the same has been done."

It was not true that plaintiff confirmed the Stice contract, but it was plaintiff's insistence on 8 per cent interest which necessitated the change in that contract.

In a letter from defendants to plaintiff, dated December 27, 1918, written to accomplish the nefarious purpose to be revealed presently, defendants twice used the expression, "when you listed the land," when emphasizing the portion of the postal card which read, "terms to suit buyer."

It is not necessary to debate the probative force of this evidence. Defendants accepted plaintiff's listing of the land with them for sale. Acting for him, they showed the land to a prospective purchaser. The purchaser was not only willing and able to buy, but he entered into a written contract with defendants as plaintiff's agents, which needed nothing but ratification by plaintiff to bind the purchaser.

Having found a buyer willing to pay a price greatly in excess of that which the principal was willing to accept, the agents undertook to buy the land themselves from the principal. They did not, however, accept the proposition stated on the postal card. On the

day the Stice contract was signed they sent plaintiff a telegram containing an offer to purchase at the price of $7,700, which was $75 less than the net list price, and on the same day confirmed the telegram by letter. The letter contained the following: "We believe this is a good offer, considering conditions here."

On December 23 plaintiff acknowledged receipt of the telegram, asked for further information, and expressed the hope the purchaser was reliable, but did not accept the counter offer. On December 27 defendants replied by a letter containing the following statements:

"We can hardly see how we can buy this land on any other terms than we stated in our telegram and our letter. . . . The day we wired you we had a man here wanting to trade a stock of goods with us, and we figured out a deal with him whereby we could make the trade, provided we could buy your land at the price and terms stated in our telegram. . . . If this was our land, under the present conditions, we would be very glad to dispose of it, as we recently sold some of our land, or rather gave it away, and took back third mortgages; the terms being just what they asked. . . . Now, think this matter over again, and we believe that you will agree with us, after we have gone more into detail, that this is a mighty good offer. . . . It is mighty hard to sell land here, with nothing to show a man what has been grown for the last three years."

Terms were finally agreed on, and plaintiff executed a contract of sale to defendants for $7,700, which was consummated by a deed from plaintiff containing a blank in which Stice's name was inserted as grantee.

The relation of principal and agent is one of trust and confidence. The obligation of perfect good faith and complete disclosure rests on the agent from inception of the agency to its termination. This obligation was violated by defendants in a despicable manner, and agency and fraud having been fully established, the demurrer to plaintiff's evidence was wrongfully sustained.

The judgment of the district court is reversed and the cause is remanded for further proceedings.