No. 40,805

Ruth V. Merchant, *Appellee*, v. H. C. Foreman, Katherine Foreman, H. W. Faunce and Grace I. Faunce, *Appellants*.

(322 P. 2d 740)

Opinion filed March 8, 1958.

*Lester M. Goodell, Marlin S. Casey, Margaret McGurnaghan* and *Thomas R. Sewell,* all of Topeka, were on the briefs for appellants H. W. Faunce and Grace I. Faunce. *Hall Smith* and *William L. Rees,* both of Topeka, were on the briefs for appellants H. C. Foreman and Katherine Foreman.

*Hal C. Davis,* of Topeka, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The action was one by a principal against her agents for damages for false representations which induced an exchange of real estate. The defendants' demurrers on the ground that the petition did not state facts sufficient to constitute a cause of action were overruled, and they have jointly appealed.

Plaintiff's petition is summarized as follows: Plaintiff and each of the defendants are residents of Topeka, Kansas. During May, 1955, and prior thereto, plaintiff was the owner of a 120-acre farm in Osage County, Kansas, upon which was located a modern home and certain other appurtenances associated with a farm, together with various growing crops. There was a $2800 mortgage on the farm held by the National Farm Loan Association of Emporia, Kansas.

About the middle of May, 1955, plaintiff decided to sell her farm, and contacted the Foreman Real Estate Agency in Topeka, where

she met defendants H. C. Foreman, H. W. Faunce and Grace I. Faunce. At plaintiff's request H. C. Foreman listed her farm for sale for $10,000, and stated he had sold farm land in the vicinity of her farm and was acquainted with her tenants.

Defendants Katherine Foreman, H. W. Faunce and Grace I. Faunce were present in the real-estate office many times when plaintiff was there and represented themselves as being connected with and working in the office, and talked with her about selling or trading her farm for other property located in or near Topeka.

Plaintiff returned to the real-estate office three or four days after listing her farm for sale and H. C. Foreman, Katherine Foreman and H. W. Faunce were present. Plaintiff advised the defendants she was highly nervous and upset; that she had traded for the farm approximately a year before and had moved there with her daughter for the purpose of trying to make a living, but that expenses were high and costly repairs were made. As a result, she was in debt, needed immediate cash to pay her current bills, and requested defendants endeavor to sell her farm as soon as possible.

Defendants attempted to negotiate a trade of plaintiff's farm for other property listed with them. Plaintiff signed a contract for the trade upon the advice of defendants, but the trade fell through due to financial difficulties of the other party.

Defendants H. C. Foreman, Katherine Foreman and H. W. Faunce then commenced talking to plaintiff about an apartment house located at 431 Taylor, in Topeka. Plaintiff was advised that this property would bring in a good income, that it was worth more than her farm, and that it would have an income each month whereas she was never sure of getting any farm income. Defendants stated that H. W. Faunce owned the apartment house. H. W. Faunce left the room, and H. C. Foreman and Katherine Foreman stated to plaintiff that it would make a wonderful trade if they could talk Mr. Faunce into trading his apartment house for the farm; that they thought they could get an even trade and they were sure Mr. Faunce would make a loan to plaintiff for her immediate financial needs. Katherine Foreman then drove plaintiff past the outside of the apartment house. Plaintiff was not impressed, and so expressed herself. Mrs. Foreman then stated that plaintiff would really be surprised to see how nice the inside was; that it would make an excellent trade, if she could get a trade; that because plaintiff was in such a tight spot financially she had better

take this trade; that it was the best she could do; that it was the only property the defendants had which would bring plaintiff an income, and that she could get a loan of money for her immediate needs. Plaintiff was advised by defendants that she need not worry about the taxes or insurance on the apartment house as H. W. Faunce would make a loan to her and she could make monthly payments in return.

Plaintiff was returned to the Foreman Real Estate Office where the defendants again informed her that this would make a good trade and give her an immediate income; that the apartment house was worth more than the farm; that she could sell it any time she wanted her money and that this trade was the answer to her problems.

Shortly thereafter plaintiff was told to return to the Foreman Real Estate Agency, which she did; the defendants were present and had prepared a written contract for the exchange of the apartment house for plaintiff's farm. Defendants Katherine Foreman and Grace I. Faunce took plaintiff to the apartment house, showed her the inside and stated she could easily rent the two apartments for $75 a month each; that if she wanted to trade for the apartment house she should come to their office immediately and sign the papers, if not, H. W. Faunce was thinking of putting it on the market for sale; that because he was a real-estate dealer he could sell it quickly, and that he had agreed to loan plaintiff $1000 in cash for her immediate needs and would place a mortgage on the apartment house to cover the loan.

Relying upon and believing the representations as to the value of the apartment house, plaintiff signed a purported agreement for exchange of property and was then told by the defendants that they would clear the loan on her farm but to do so would necessitate her mortgaging the apartment house for $2800. At that time plaintiff was so upset and confused by the representations and conversations between defendants and herself that she did not understand or realize what she was doing, nor did she realize that defendants were not making an even trade for her farm. Relying upon defendants' representations plaintiff signed a contract for the exchange of her farm for the apartment house.

Plaintiff was instructed to return to the real estate office and she would receive the $1000 to be advanced to her. She returned June 6, 1955, when she was given a deed to the apartment house signed

and executed by H. W. Faunce and Grace I. Faunce, and was then advised that defendant H. C. Foreman was charging a real-estate commission of $300, and after deducting costs of sale she would receive only $660.80. Thereupon H. W. Faunce executed and delivered to plaintiff two checks totalling $660.80.

Plaintiff alleged that the reasonable value of her farm was at least $10,500, and the growing crops had a value of approximately $1000.

Shortly before June 6, 1955, H. W. Faunce and Grace I. Faunce purchased the apartment house for $4800 and had expended approximately $600 in repairs, and each of the defendants knew its reasonable and highest market value did not exceed $7500. Defendants H. C. Foreman and H. W. Faunce were familiar with the value of plaintiff's farm and they were representing her as her agent in the sale of her farm, but notwithstanding, they induced and enticed her through false and fraudulent representations to exchange her property for that of H. W. Faunce, and the defendants knew their statements and representations were false and untrue.

Plaintiff was instructed and directed by the defendants to sign a promissory note payable to defendants Faunce in the amount of $3800 and to execute a mortgage on the apartment house to secure its payment. Defendants stated it was necessary for her to clear the farm and that defendants Faunce would pay the $2800 mortgage due on it by her executing a promissory note and mortgage to them for $2800 on the apartment house and that they were including therein the $1000 advanced to her for her immediate needs.

The defendants were well acquainted with plaintiff's mental and physical condition, knew she was upset and highly nervous, and well knew the apartment house was old, in need of paint, the plumbing was in poor condition, and that it was of much less value than her farm with its growing crops, but notwithstanding, through statements and representations which defendants knew were false and untrue, they stated to her that the exchange of property was a fair and reasonable exchange; that the apartment house, even with a mortgage of $2800, was worth more than her equity in the farm, and that unless plaintiff made this trade she would probably lose her farm due to debts which she owed. All of defendants' statements were made for the purpose of falsely and fraudulently inducing and persuading plaintiff to sign the contract, warranty deed, and note and mortgage for the exchange of the property.

The prayer was for actual damages in the amount of $4,000 and punitive damages of $10,000.

The demurrers raise the question whether the facts stated in the petition constituted a cause of action. Defendants concede the established rule prevailing in this jurisdiction is that the allegations of a petition, when tested by a demurrer, are to be taken as true, the pleader being entitled to all favorable inferences that may be drawn from the facts pleaded. (*Richards v. Tiernan,* 150 Kan. 116, 91 P. 2d 22; *Sedan State Bank v. Stephenson,* 150 Kan. 210, 92 P. 2d 1; *Snyder v. McDowell,* 166 Kan. 624, 625, 203 P. 2d 225.) Thus, in determining whether the plaintiff's petition stated a cause of action, we have concluded that the demurrers admit as true all of the facts pleaded, and it is in this light that we review the sufficiency of the petition.

The demurrers were based upon the contention the allegations of the petition established that (1) the relationship of principal and agent between plaintiff and W. H. and Grace I. Faunce was terminated; (2) the exchange of properties was an even trade, and (3) statements made by the defendants concerning the properties were merely expressions of opinion as to value and not statements of fact upon which a charge of false representations could be based.

With respect to the first point, defendants argue that when Faunce's ownership of the apartment house was disclosed, he withdrew from the room and the Foremans alone continued discussing a trade with the plaintiff, which, they assert, was a full and complete disclosure of all facts relating to the subject matter, established a course of fair dealing, effected an immediate dissolution of the relation of principal and agent between the Faunces and plaintiff, and that thereafter they dealt with her merely as prospective traders of property. The defendants cite no authority to sustain the contention, and our research has disclosed none.

As preliminary to discussing the first point, we refer to well-established rules applicable to its disposition: (1) the relation of principal and agent can only be terminated by the act or agreement of the parties to the agency or by operation of law, and an agency, when shown to have existed, will be presumed to have continued, in the absence of anything to show its termination, unless such a length of time has elapsed as destroys the presumption (2 Am. Jur., Agency, § 35, p. 36; 8 Am. Jur., Brokers, § 38, p. 1007; 2 C. J. S., Agency, §§ 68, 70, 81, pp. 1148, 1151, 1170; 12 C. J. S.,

Brokers, § 16, pp. 43, 44); (2) the relationship existing between a principal and agent is a fiduciary one demanding conditions of trust and confidence which require of the agent the same obligation of individual service and loyalty as is imposed upon a trustee in favor of his beneficiary (*Gillies v. Linscott*, 94 Kan. 217, 219, 146 Pac. 327; *Wolcott & Lincoln, Inc., v. Butler*, 155 Kan. 105, 122 P. 2d 720; 2 Am. Jur., Agency, § 252, p. 203; 3 C. J. S., Agency, § 139, pp. 10, 11), and that in all transactions concerning and affecting the subject matter of his agency, it is the duty of the agent to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal (*Gillies v. Linscott*, supra; *Wolcott & Lincoln, Inc., v. Butler*, supra; 2 Am. Jur., Agency, § 252, p. 203; 3 C. J. S. Agency, § 138, pp. 6, 7); (3) where a fiduciary relation is established between the parties the law views with suspicion and scrutinizes very closely all dealings between them in the subject matter of the agency to see that the agent has dealt with the utmost good faith and fairness, and that he has given the principal the benefit of all his knowledge and skill, and, if it appears that the agent has been guilty of any concealment or unfairness, or if he has taken any advantage of his confidential relation, the transaction will not be allowed to stand (3 C. J. S. Agency, § 145, p. 26; 2 Am. Jur., Agency, §§ 252, 254, 260, pp. 203, 205, 209; 12 C. J. S. Brokers, § 41, pp. 96, 97; 8 Am. Jur., Brokers, §§ 86, 88, pp. 1035, 1937), and (4) one who acts as an agent and also deals with his principal with respect to the subject matter cannot take advantage of his principal by withholding from him any information within his knowledge, including the value of the property, which might have a bearing upon the desirability of the principal to make the trade. (8 Am. Jur., Brokers, § 86, p. 1035; 3 C. J. S., Agency, §§ 139, 145 a., pp. 9, 27; 2 Am. Jur., Agency, § 260, p. 209; 12 C. J. S. Brokers, §§ 41, 47, pp. 96, 113.) See, also, 2 Restatement of The Law, Agency, where the rule is stated as follows:

". . . Before dealing with the principal on his own account, however, an agent has a duty, not only to make no misstatements of fact, but also to disclose to the principal all material facts fully and completely. A fact is material . . . if it is one which the agent should realize would be likely to affect the judgment of the principal in giving his consent to the agent to enter into the particular transaction on the specified terms. Hence, the disclosure must include not only the fact that the agent is acting on his own account, but also all other facts which he should realize have or are likely to have a bearing upon the desirability of the transaction from the viewpoint of the principal. . . ." (§ 390, Comment: a.)

Inherent in the defendants' contention is their concession that the relation of principal and agent existed between the plaintiff and all of them when it was proposed that plaintiff trade her farm for an apartment house located at 431 Taylor. At that time the Foremans and W. H. Faunce were present, and represented to plaintiff that the apartment house would bring in a good income each month and that it was worth more than the farm. Those were representations the plaintiff relied upon; they were made by Faunce as her agent *before* it was disclosed he was the owner of the apartment house. When the defendants disclosed no more to the plaintiff than Faunce's ownership, they fell short of their duty as agents. It was their duty to fully advise the plaintiff of all facts within their knowledge affecting the value of the apartment house, including the fact that the Faunces had recently purchased it for $4800 and had expended approximately $600 for repairs. Until the relation of principal and agent is terminated by act or agreement of the parties, the relation continues, and partial disclosure of facts within the agent's knowledge is insufficient to terminate that relation when others associated with the agency continue to deal with the principal for an exchange of his property for that owned by one of the agents. Here, Faunce's mere withdrawal from the room was insufficient to satisfy the strict requirement of the defendants' fiduciary duties to plaintiff, or to constitute a termination of the Faunce's relation with plaintiff as her agents.

Furthermore, defendants' unfairness in concealing, until after the signing of the contract, that they would require the plaintiff to mortgage the apartment house for $2800 so they could clear the farm of the mortgage, and also their concealment until after the trade was made, that a $300 commission would be deducted from the $1,000 cash loan are facts which cannot be overlooked. Faunce was the original recipient of the commission and expenses of sale, which negates the assertion that Foreman alone made the charge for the commission, and Faunce's deduction of that charge from the checks he gave the plaintiff was sufficient to indicate to her that he was still acting as her agent.

Giving the petition the liberal construction to which it is entitled when attacked in the manner indicated, it sufficiently alleged that representations upon which the plaintiff relied were made by the defendants as agents of the Foreman Real Estate Agency and that each of them equally participated in making the exchange of properties.

Defendants' second point that the exchange of properties was an even trade could be passed as having no merit. Defendants claim an even trade could only have consisted of plaintiff's farm free of encumbrance to Faunce for Faunce's apartment house encumbered by the $2800 mortgage. There are other meanings equally applicable for the term "even trade"; for instance, plaintiff's equity in the farm for Faunce's apartment house unencumbered, or a trade of equally-valued properties. Either meaning could be accepted in favor of the petition. The point is not well taken.

Defendants' third point is that statements made by them concerning the properties were merely expressions of opinion as to value and not statements of fact upon which a charge of false representations could be based. They cite and rely upon *Ross v. Cox,* 93 Kan. 338, 144 Pac. 227; *Berridge v. O'Flanagan,* 122 Kan. 74, 251 Pac. 175, and *Harvey v. Tucker,* 136 Kan. 61, 12 P. 2d 847, which held that statements of value or comparative value of real estate made by agents in endeavoring to sell or exchange it are ordinarily regarded as expressions of opinion and not representations of fact upon which an action of deceit can be predicated.

Under the facts alleged we do not think that general rule applicable. The plaintiff was ignorant of real-estate values and employed the defendants as her agents to represent and advise her, and she relied entirely upon their statements and judgment. When they falsely represented to her that the apartment house was worth more than the farm, they violated their duty as agents, and so far as the allegations of the petition are concerned, they intentionally misrepresented the comparative value of the properties. The plaintiff had the right to receive her agents' opinion, but, clearly, that opinion was not justified by the facts as alleged, hence, it may be regarded as a statement of fact upon which an action for false representations can be predicated. In *Subke v. Gonder,* 97 Kan. 414, 155 Pac. 793, it was said:

"Speaking generally, the relation between principal and agent is confidential. Its essence is fidelity, and whenever the principal has the right to receive the agent's opinion it must be an opinion fairly justified by the facts. In such cases a statement of opinion is regarded in the light of a statement of fact, and a charge of false representation may be predicated on a false and unwarranted statement of value the same as upon a false statement regarding topography, the character of improvements, the amount of rent received, and the like." (l. c. 419.)

See, also, *Jones v. Arnold*, 89 Kan. 755, 132 Pac. 1000; *Suderman v. Koch*, 101 Kan. 708, 168 Pac. 906; *Schlesener v. Mott*, 107 Kan. 41, 190 Pac. 745, and *Deardorff v. Coons*, 118 Kan. 747, 236 Pac. 835. Moreover, where a real-estate broker knows that his principal is ignorant of real-estate values and relies entirely upon his statements and judgment he is held to a strict standard of truth and may be held accountable for statements, made as to value, knowing them to be false. (*Griesa v. Thomas*, 99 Kan. 335, 161 Pac. 670; *Fourth Nat'l Bank v. Webb*, 131 Kan. 167, 290 Pac. 1.)

Defendants rely heavily upon *Harvey v. Tucker*, supra, as not being distinguishable. The instant case contains facts not there present. In the Harvey case, *supra*, the failure to disclose the listed price of a property for which plaintiff traded was held not actionable upon the ground that a listed price. may not represent value. An example given was that the owner may have been so anxious to sell that he undervalued the property when listing it. In the instant case the statement was made with certainty that the apartment house was of more value than the farm. In the Harvey case there was no showing that the broker was acting in his own interest. Here, the concertive action of all the defendants indicates a joint undertaking for the personal interest and financial gain of some, if not all, of them, and as recognized in the Harvey case, a presumption of fraud will not be deemed to arise against an agent unless it appears he has personal interests conflicting with those of the principal. Further, in the Harvey case the defendants were not shown to have known that the plaintiff was relying entirely upon their statements and judgment. That is a persuasive element here.

We have reviewed the record and conclude the petition stated facts sufficient to. constitute a cause of action and that plaintiff should be permitted to go to trial upon its allegations. The trial court did not err in overruling the defendants' demurrers.

The judgment is affirmed.