No. 30,655.

FRED C. HARVEY, *Appellant*, v. JOHN TUCKER and WILLIAM GABEL, *Appellees.*

(12 P. 2d 847.)

Opinion filed July 9, 1932.

*Alex McIntosh,* of Kansas City, for the appellant.

*William E. Carson,* of Kansas City, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This action is against a real-estate agent for damages on account of fraud, misrepresentation and concealment of facts in effecting an exchange of properties to the detriment of the

plaintiff who had employed him as his agent and relied upon his honesty, fairness and judgment. After a second trial of the action the petition was amended by making the other party to the exchange a party defendant and alleging conspiracy between him and the agent. At the close of the plaintiff's evidence the trial court sustained a demurrer to the evidence, and plaintiff appeals.

The plaintiff was the owner of a residence property and a vacant lot in Kansas City, Kan., and desiring to exchange them for a small farm listed them for that purpose with defendant Tucker, a real-estate agent and personal acquaintance, placing a value on them of $6,500. An exchange was effected with defendant Gabel for his forty-acre tract and $800 cash. The petition alleged fraud, misrepresentations and concealment of facts in numerous ways and particulars, but the evidence only tended to show it in four particulars: (1) in concealing from plaintiff the listed price placed on the forty-acre tract; (2) in representing it to be about as good a property as the Wakefield farm, listed at $6,300, and that the farm and $800 would make a good deal for the plaintiff; (3) in conspiring with Gabel to boost the price of the farm and (4) in concealing from plaintiff the purchase of the town property by Tucker from Gabel before the original deal was closed. The evidence shows that when Tucker advertised the town property for exchange he received a letter from Gabel describing his farm, closing the detailed description with the words, "Price $4,000." This price was not told plaintiff, but he went with the agent and made a thorough examination of the farm on two occasions, and no price was mentioned in the written contract of exchange. It was simply the town property for the farm, plus $800. The only mention of price was when plaintiff listed his property at $6,500 he said Tucker told him that was too high, and when they looked at the Wakefield farm Tucker told plaintiff it was listed at $6,300. Of course, a fiduciary relation existed between the principal and his agent, and the agent should not conceal from his principal any material fact. The fact that Gabel did not ask more than $4,000 cash for his farm might have been to his detriment if he was so anxious to sell as to undervalue it. Complaint is usually the other way where the trading price is boosted so as to impress the trader with an exalted idea of its real worth. In the case of *Subke v. Gonder*, 97 Kan. 414, 155 Pac. 793, complaint was made in an action similar to this one against the agent that the land offered in trade for plaintiff's was listed and

priced at $85 per acre, whereas in truth it was only worth $35 per acre. It was held in that case, as in nearly all such cases, that a listed price or estimated price per acre is an expression of opinion upon which an action of false representation cannot be predicated. The mere fact that the plaintiff did not know that the farm owner had underestimated the value of his farm or placed such a low price on it, would not be a material fact when they were exchanging properties after full investigation without naming a price on either, even conceding the agent should properly have told his principal of the listed price. (2 C. J. 714.)

Appellant cites the case of *Shaffer v. Lindsay*, 114 Kan. 22, 216 Pac. 813, in this connection, but there the agent was in full charge of the sale of the property and took advantage of his superior knowledge to his own financial benefit, and of course the court held his concealed knowledge of the increased value of the stock sold to his wife was concealing a material fact.

On the second point the authorities are uniform that statements of value or comparative value of real estate made by agents in endeavoring to sell or exchange the same are ordinarily regarded as expressions of opinion and not representations of fact upon which an action of deceit can be predicated. (*Berridge v. O'Flanagan*, 122 Kan. 74, 251 Pac. 175; and 26 C. J. 1215.)

"A false statement as to the value of land, made to induce an exchange for other land, was held to be an expression of opinion rather than a representation, and not actionable." (*Else v. Freeman*, 72 Kan. 666, syl. ¶ 2, 83 Pac. 409.)

In the opinion of the case last cited the word "good" is discussed as used by the agent with reference to the fences and regarded as a comparative term in the nature of an opinion. In the instant case the agent said the farm and $800 would make a good deal for plaintiff.

"The mere fact that an increased value is placed on property involved, for the purpose of the exchange, does not render the transaction fraudulent. But a representation as to the value of real property involved in an exchange made as a matter of fact and not as an expression of opinion may be fraudulent; and this rule has been held to apply where the party to whom the representation is made has not seen the land . . ." (23 C. J. 199.)

The third point—the statement of Gabel that Tucker told him that they "would boost the price of the farm a little, if necessary"—is not sufficient unless it is shown that it was done. We have no evidence that it was boosted, and Gabel testified on cross-examina-

tion that Tucker never did raise or boost the price. In substance all we have along that line has already been mentioned, the listed prices of $6,500 and $4,000, comparing the farm with the Wakefield farm, and saying the farm and $800 would make a good deal for plaintiff. These have been shown to be mere expressions of opinion. (12 C. J. 581.)

The last point, presented most earnestly by appellant, is the concealing from plaintiff of the purchase of the town property by Tucker, the agent, before the original deal was concluded. Appellant cites numerous cases condemning such practice on the part of the agent, and we heartily concur in them to the fullest extent, but the evidence does not go as far as appellant lays it as a premise. The evidence shows that when the contract for exchange of properties was signed, Gabel by oral agreement reserved the privilege of disposing of the city property before the exchange of papers thirty days later because he "was not prepared to pay the $800." Later he thought he had arranged to sell it, but his prospective buyer was taken ill and the day before the deeds were to be exchanged he asked Tucker what he would give him for his equity in the town property and agreed to let him have it for $1,200. The plaintiff and wife executed separate deeds in blank as to grantee for the residence property and the vacant lot and they were left with Tucker when the deeds were exchanged. The record shows the name of a son-in-law of Tucker was placed in the deed to the vacant lot and that of Mr. McDonald in the one conveying the residence property. The plaintiff took his deed, placed it on record and at once commenced making improvements on the farm. During this thirty-day intervening period between the making of the contract of exchange and the exchange of deeds, a mortgage was made on the city residence property by the plaintiff by agreement, and the funds were used to release the mortgage on the farm and pay the $800, leaving a small balance, in no way changing or modifying the terms of the exchange agreement.

Appellant insists that Tucker, during this thirty-day period, was not only the trusted agent of the plaintiff and disloyal to plaintiff in negotiating with Gabel either as his agent to sell the town property or purchase it himself without telling the plaintiff that he was doing so, but that he was also an escrow holder of the contract, deeds and other papers. The evidence does not sustain the claim as to being an escrow holder, and as an agent his duties were to find a purchaser or one who would exchange a small farm for the city

property, although the record shows he did help get the abstracts and papers ready for the exchange and did say, in effect, concerning that work, "Leave that to me; I'll take care of it." The most that plaintiff's evidence shows, giving it the liberal construction in favor of plaintiff's theory of the case, to which it is entitled under the uniform rule on the consideration of a demurrer to the evidence, is that Tucker acted as agent for Gabel for the sale of plaintiff's town property the day before the deeds were exchanged and twenty-nine days after the contract for the trade was signed, when it was understood that Gabel was to have thirty days to find a buyer for the city property. If Tucker's duty to plaintiff had been fulfilled and there was nothing further incumbent upon him toward the plaintiff there would be no breach of duty in trying to find a buyer for the same property for the new owner thereof. But appellant urges that he realized a profit for Gabel and for himself by finding new purchasers. While it is near the danger zone for an agent to resell property for the new purchaser, yet that danger consists only in some element of fraud which is never to be presumed and always necessary to be established before the plaintiff can make his case. There is no substantial evidence of fraud here shown. Opportunities, possibilities and presumptions are not enough. Arguments are based upon figures as to dollars and cents involved in the several transactions to show that Tucker got a second commission or profit in effecting the second sale of the city property, and appellant claims that any advance price obtained for the city property while Tucker was still his agent and before the exchange of deed should inure to his benefit. We think not unless there is proof of some subterfuge, disloyalty or bad faith.

"After a real-estate agent has effected a sale of his principal's land to a vendee who purchased for himself, the agent may purchase for himself from the vendee, providing the agent's mediate acquisition of his principal's land was free from subterfuge and was characterized throughout by good faith.

"A real-estate agent sold a tract of land, and his principal executed a contract of sale to the purchaser whereby the purchaser became entitled to a deed on making monthly payments until the price was fully paid. After making two monthly payments the purchaser assigned the contract to the agent, who afterwards sold the land to another vendee. The jury found the agent acted in good faith. *Held,* the agent was privileged to resell the land on his own account, without notice to or consent of the principal." (*Barnett v. Dunlop,* 121 Kan. 758, syl. ¶¶ 1, 2, 250 Pac. 299.)

"After termination of the agency for one person a broker may act for another adversely interested without breach of trust as to the former." (9 C. J. 541.)

"As a general rule, after one has performed his office as agent or has in good faith severed his relation as agent, he is free to take up negotiations for his own interest, and can act adversely to his former principal as fully as any other person." (2 C. J. 714.)

". . . No presumption of fraud will be deemed to arise against an agent unless it appears that he has personal interests conflicting with those of the principal." (21 R. C. L. 827.)

We find no error in the trial court sustaining the demurrer to the plaintiff's evidence.

The judgment is affirmed.