No. 31,761

D. L. Stoner, *Appellee,* v. Prosper Wilson, Paul Remmele, Milo C. Stivers and James W. Cavender, *Appellants.*

(36 P. 2d 999)

Opinion filed November 3, 1934.

*Roland Boynton,* attorney-general, *Everett Steerman,* assistant attorney-general, *John D. Cunningham,* of Seneca, and *Fred R. Smith,* of Manhattan, for the appellants.

*James L. Haley,* of Sabetha, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages on account of an alleged conspiracy among the defendants to injure plaintiff in his business and occupation as a barber. From a judgment in favor of plaintiff the defendants appeal.

The original petition, briefly stated, alleged that plaintiff and defendant Cavender were residents of Nemaha county; that defendant Wilson was a resident of Leavenworth county; defendant Remmele was a resident of Riley county, and defendant Stivers, of Smith county, and defendants Wilson, Remmele and Stivers composed the Kansas state barber board; that for many months prior to March 30, 1932, plaintiff was a duly licensed barber conducting a business in Sabetha, making a living for himself and family, and that on March 30, 1932, the defendants conspired to prevent his practicing his trade at Sabetha and to injure him in his standing and business reputation and to hinder him in the practice of his trade at prices charged by him, knowingly, willfully and maliciously caused defendant Wilson to file a criminal complaint against plaintiff for violation of a regulation of the state barber board with reference to the use of towels; that plaintiff was arrested and held until he gave bail and later went to trial, when the case was dismissed. A second cause of action alleged a similar conspiracy, and that on April 7, 1932, defendants caused defendant Wilson, without any just or reasonable cause therefor, to file a complaint against plaintiff before the Kansas state barber board for violation of the rule of the board with reference to the use of towels; that at the time the criminal proceedings were dismissed, defendants stated they would revoke plaintiff's license and put him out of business; that on April 14, 1932, defendants Wilson, Stivers and Remmele held a pretended hearing; that they were not honest, unprejudiced competent persons to hear the complaint, but prejudiced and unfair and had already stated and determined to revoke plaintiff's license, and without any evidence before them unlawfully revoked the license, to plaintiff's damage. Copies of the criminal complaint, warrant and bond and of the complaint and notice before the barber board were attached as exhibits. Summonses were issued directed to the counties of residence of the several defendants. To this petition Cavender filed a general demurrer, and the other defendants entered special appearances, and moved to quash the services of summonses

upon the ground the court had no jurisdiction of the moving defendants. On December 15, 1932, the demurrer was overruled, and the motions denied. Later a motion to strike out an allegation was allowed, and thereafter an amended petition was filed, which will be noticed later. All of the defendants filed motions to make the amended petition more definite and certain, which motions were denied, and thereafter each filed general demurrers which so far as here material were overruled on April 24, 1933. Thereafter each defendant answered. The first four specifications of error are that the court erred in overruling Cavender's demurrer to the original petition, in denying the other defendant's motion to quash the service of summons, in denying the motion to make the amended petition more definite and certain, and in overruling the demurrers to the amended petition.

In so far as rulings on all demurrers are concerned, the record shows no notice of appeal was served until November 27, 1933, or more than six months after the last ruling. The question is no longer open. (*King v. Stephens,* 113 Kan. 558, 563, 215 Pac. 311, and cases cited, and *Hamill v. Hamill,* 134 Kan. 715, 717, 8 P. 2d 311.)

On the question of whether the motion to quash was properly denied, however, it becomes necessary to examine the petition and the amended petition to determine that a cause of action was stated against Cavender, for if no cause was stated against him, there was no basis for bringing in the nonresidents. (See *King v. Ingels,* 121 Kan. 790, 792, 250 Pac. 306, and cases cited.)

What constitutes a sufficient pleading? In 12 C. J. 629 *et seq.* it is said:

"In an action on the case in the nature of a conspiracy, the grounds, or gravamen of the action whether single or several, must be set out with the same certainty as in an action against a single defendant for the same character of action, whether it be libel, slander, assault and battery, malicious prosecution, or false imprisonment; for the judgment may be against a single defendant without proof of the conspiracy, although it cannot be entered against joint defendants without such proof." (p. 629.)

"In an action of the nature under consideration, the rule is to allow great latitude in setting out in the complaint the particular acts from which the conspiracy is to be inferred; even going so far as to allow the individual acts of the conspirators to be averred. The act complained of, however, must be definitely and issuably stated, so that, if the facts themselves should be admitted, the court can draw legal conclusions, and so the opposite party will be

apprised of what he is called on to answer. An averment that a party has acted unlawfully without showing what he did is not an averment of issuable facts." (p. 630.)

In 5 R. C. L. 1103 it is said:

"Little need be said with reference to the pleadings in actions for conspiracy, as the rules with reference thereto do not differ materially from those applicable in other actions. The complaint must, as in other cases, contain allegations of the facts necessary to constitute a cause of action. For example, in an action for conspiracy maliciously to prosecute the plaintiff, the complaint must contain sufficient averments to sustain an action for malicious prosecution; it must allege want of probable cause. . ."

In the early case of *L. L. & G. Rld. Co. v. Comm'rs of Douglas Co.*, 18 Kan. 169, it was held that where the petition alleged in general terms only that there was a fraudulent and corrupt conspiracy and that the act complained of was done in pursuance of such conspiracy, the defendant has the right upon motion to have the petition made definite and specific by a statement of facts showing the terms, nature and extent of the conspiracy. That case and the rule stated were cited with approval in *State, ex rel., v. Williams*, 39 Kan. 517, 520, 18 Pac. 727. While not involving the question of pleading, the recent case of *Harvey v. Tucker*, 136 Kan. 61, 12 P. 2d 847, holds:

"However odious any conspiracy is and ought to be, no civil liability exists against anyone in the conspiracy unless something is actually done by one or more of the conspirators pursuant to the scheme and in furtherance of the object which results in damages." (Syl. ¶ 3.)

In *Federal Reserve Life Ins. Co. v. Gregory*, 132 Kan. 129, 133, 294 Pac. 859, it was said:

"The rule that the specific facts of a fraudulent transaction must be pleaded is not to be so rigidly applied as against a demurrer, that the parties who perpetrated the fraud may keep their ill-gotten gains because they have abstracted and concealed the books and papers which should contain a record of it, and where the details of the transaction were perpetrated in secret and are not within the knowledge of the defrauded party, but well known to the parties which committed it." (p. 133.)

And see, also, *Hutson v. Imperial Royalties Co.*, 135 Kan. 718, 13 P. 2d 298, where the question of conspiracy is treated.

From the above-mentioned cases and texts and others which might be cited to the same general effect, it is deduced that the mere charging of a conspiracy without stating the facts and circumstances which warrant recovery against the claimed conspirators, is not sufficient, and in order that the petition state a cause of action

the acts of the parties from which it follows or may be inferred that there was a conspiracy, must be alleged as well as the facts showing that as a result the plaintiff suffered damages for which he is entitled to recover.

The original petition, after alleging residence of the various parties, and that plaintiff was a licensed barber at Sabetha where he bore a good reputation and where his business provided proper support for himself and his family, charged that on and prior to March, 1932, the defendants, maliciously intending to hamper the plaintiff in his business and to prevent him from practicing his trade, to injure him in his standing and business reputation and to hinder and prevent him from practicing his trade at the prices charged by him, conspired together to prevent him from so practicing his trade, and knowingly, etc., induced, caused and procured defendant Wilson to file a criminal complaint in the justice court against him charging a violation of Rule No. 7 of the Kansas state barber board with reference to the use of towels, said complaint being made without good or proper cause, and caused a warrant to issue thereon, all solely in an endeavor to coerce plaintiff into charging more for his services; that arrest and imprisonment followed; that he was compelled to give bond and to hire attorneys to defend him and that when the case was called it was dismissed by the justice of the peace. In what was denominated a second cause of action, but which was in fact only a continuation of the first cause of action, as appellants evidently believe it was, for they filed a motion which the court sustained to strike out that sentence charging a second cause of action, similar allegations were made with reference to a hearing before the state barber board, at which the plaintiff's license was revoked on account of a claimed violation of the same rule which was involved in the criminal action, the allegation being made that at the time the criminal complaint was dismissed the defendants constituting the state barber board stated in the presence of the plaintiff and others that the board would revoke the plaintiff's license and put him out of business. With reference to the revocation of license, it is alleged that at the time the complaint was made there was no just or reasonable ground therefor, and no just or reasonable ground for any trial in connection therewith, all of which was well known to the defendants and each of them. It is not necessary to set out the damages claimed. No motion to make more definite and certain was leveled at the original petition. We

have no difficulty in saying that the petition charged a conspiracy by all of the defendants to prosecute the plaintiff criminally in the justice court and civilly before the state barber board with the intent to prevent him from carrying on his occupation as a barber, in an endeavor to coerce him into charging more for his services, and the doing of acts calculated to produce that result; that while the acts charged were general rather than special as to the defendant Cavender, a cause of action was stated against him as well as against the other defendants. It follows that the petition against Cavender being sufficient, the other defendants were not entitled to have their motions to quash the service of summons allowed.

After the trial court ruled on the above demurrer and motions the plaintiff filed an amended petition, to which each of the defendants filed motions to make more definite and certain, by setting out the facts and circumstances which constituted the conspiracy, what inducements the defendants made to procure defendant Wilson to file the criminal complaint, and how each defendant acted in conjunction with the others in connection with matters before the barber board. Space prevents a repetition of the allegations as amplified and supplemented in the amended petition. In addition to other allegations, it is charged that all of the defendants conspired for the purpose of coercing plaintiff into charging more for his services, and there is ample allegation of what was done in furtherance thereof. While possibly the court should have sustained the motion so far as stating what each defendant did in entering into the conspiracy, it is not made to appear that any one of them suffered any in his defense. After the motions were denied, each demurred and the demurrers were overruled, whereupon defendant Cavender filed his answer in which he denied entering into any conspiracy and each of the other defendants filed answers setting up a general denial, a specific denial of conspiracy, and alleging his appointment as a member of the state barber board, the duties of that board, the adoption of rules and regulations by the board, the enforcement thereof by the board, that defendant Wilson, in performance of his duties, found that plaintiff had violated Rule 7 with reference to the use of towels and caused plaintiff's arrest; that there was probable cause for believing him guilty; that Wilson's act in causing plaintiff's arrest was not known to the other defendants until afterward, and was not the result of any conspiracy, but was in performance of his duty as a member of the state barber

board. That when plaintiff was tried on the criminal charge, it was dismissed because of a claim that the regulations of the board had not been duly published; that defendants did not state they would revoke plaintiff's certificate; that proceedings were instituted before the state barber board to revoke plaintiff's certificate for violation of Rule 7; that a hearing was had at which defendant Wilson did not sit; that a certificate was thereafter reissued to plaintiff; that all acts of the defendants, members of the barber board, were done by them officially, in good faith, without malice and in the honest exercise of their best judgment; that there was no conspiracy between each answering defendant and the remaining defendants to prevent plaintiff from practicing his trade, and "any concerted action taken by this defendant and any other defendant or defendants herein in relation to plaintiff was solely for the purpose of enforcing the provisions of the statutes of the state of Kansas relating to the practice of the barber trade and required of the defendant members of said state barber board by law," and a denial that plaintiff had suffered any damage or if so it was the result of his own unlawful acts. The last allegation was that the action against defendant Cavender was not brought in good faith but only for the purpose of obtaining jurisdiction over the other defendants.

The case was tried before a jury. After plaintiff's opening statement had been made, each defendant objected to the introduction of any evidence for the reason that the amended petition and opening statement do not state facts sufficient to constitute a cause of action. The overruling of this motion is assigned as error. The opening statement is not abstracted, so we do not know what was said, but assuming it outlined a case similar to that alleged in the amended petition, for reasons heretofore given, the motion was properly denied. At the conclusion of plaintiff's case defendant Cavender demurred to the evidence as not proving a cause of action, and the overruling of this demurrer is assigned as error. It is contended there was no evidence connecting Cavender with any conspiracy or that he did anything in carrying out any conspiracy. Only such testimony as tends to show this will be noticed. Plaintiff came to Sabetha from Missouri in 1929, and obtained a license in Kansas and operated a shop for himself in Sabetha. Cavender had a shop across the street. Plaintiff testified that prior to the matters complained of, a meeting of about fifty barbers was held at Caven-

der's shop, the defendants other than Cavender not being there. The question of prices to be charged was discussed. Plaintiff had a schedule of prices posted in his shop of 15 cents for a shave and 25 cents for a haircut. The other shops in Sabetha were charging 20 cents for a shave and 35 cents for a haircut. After that meeting, another meeting was held at another shop, Cavender being present with seven or eight others. They endeavored to get plaintiff to raise prices with them, but plaintiff refused, and went home. Before this last meeting, defendant Wilson had inspected plaintiff's shop, and inquired what prices were charged. Wilson told him he couldn't make a living and keep his shop sanitary at his prices, and he had better get in line with the other barbers. Plaintiff refused, and Wilson said he was going to send some spotters around to check up some of "us fellows" for violating the law. Three or four days thereafter there was another meeting at Cavender's shop. After plaintiff had retired, two men came to his home and said defendant Wilson was at the meeting and wanted him to come. About the same time two strangers, whom he suspected of being spotters, came into his shop, played pool in a part of the room to the rear, and afterwards were shaved by plaintiff, although one of them did not need a shave. He used a clean towel on each of them. He saw defendant Wilson in town the same day. The next day he was arrested and went to Judge Miner's court, where he saw the complaint signed by defendant Wilson. He went out in custody of a constable and procured a bond. He hired an attorney, procured his witnesses and attended the trial later had when the case was dismissed. Before it was dismissed he heard the defendant members of the barber board consult together and heard Wilson tell the county attorney to dismiss the case "and we will revoke his license." About an hour after the dismissal he was served with notice of the hearing to be held at Holton, at which his license was revoked. All three members of the board were in his shop when he was given notice. He appeared at the hearing in Holton with his counsel and witnesses. The two young men whom he suspected of being spotters appeared and testified. His attorney objected to Wilson sitting, and Wilson did not sit, but was present at the hearing. The two young men testified that Wilson had hired them to come up and "spot" him for violation of a rule; they were to receive five dollars to come to Sabetha and if they got the "goods on me" they were to get five dollars more.

A witness testified he was a barber and had worked in Sabetha five years; that he attended five meetings of the Northeast Kansas Barbers in 1932, two of the meetings being in Sabetha, saw various members of the barber board at these meetings, but the meeting at Holton was the only one at which all were present. Two meetings were held in Cavender's shop, plaintiff being present at the first, which was attended by forty or fifty people. Prices were discussed and they tried to get plaintiff to raise his prices, the main purpose of the meeting being to get all the barbers together on the same prices. At that time plaintiff was the only one not charging the prices wanted generally. Cavender was present and took part. Cavender was present at the Holton meeting where there was some conversation with reference to plaintiff, heard defendant Stivers tell one Levick if they could not get plaintiff to raise his prices they would have to revoke his license. The purpose of the Holton meeting was to see if northeast Kansas could not be organized to have one price. At the second meeting at Cavender's shop defendant Wilson was present, as was Cavender. Wilson said that if plaintiff would not raise his prices, they would have to try to get his license revoked.

Another witness testified he attended meetings of the Northeast Kansas Barbers Association. He attended more than one meeting at Cavender's shop, and at one meeting Wilson was present and said with regard to plaintiff: "If we can't get him to do it otherwise we will revoke his license." Witness' recollection was this was the night before plaintiff was arrested. There were other witnesses as to what took place at the trial, what Wilson said about revoking plaintiff's license, what the two "spotters" had done at plaintiff's shop; that plaintiff had used clean towels on each of the spotters; about the hearing at Holton, about the damages sustained by plaintiff. Certain evidence, the competency of which is questioned, is hereafter referred to.

In 5 R. C. L. 1103 the rule of evidence in civil cases for conspiracy is stated:

"The rules of evidence applicable in criminal prosecutions for conspiracy, which have already been considered, are effective in civil cases of conspiracy. The combination or conspiracy may be proved by evincing a concurrent knowledge and approbation in the persons conspiring, of each other's acts; and it is usually done by proof of the separate acts of several persons concentrating in the same purpose or particular object. The greater the secrecy that is observed relative to the object of such concurrence, and the more apparent the

similarity of the means employed to effect it, the stronger is the evidence of conspiracy. For ·the purpose of showing such connection, therefore, circumstantial evidence suffices. The plaintiff may either prove the conspiracy which renders the acts of the conspirators admissible in evidence, or he may prove the acts of the different persons, and thus prove the conspiracy."

And in discussing the necessity of direct evidence, it is said in the same volume, page 1088:

"Conspiracies need not be established by direct evidence of the acts charged, but may, and generally must be, proved by a number of indefinite acts, conditions and circumstances which vary according to the purposes to be accomplished. The very existence of a conspiracy is generally a matter of inference deduced from certain acts of the persons accused, done in pursuance of an apparently criminal or unlawful purpose in common between them. The existence of the agreement or joint assent of the minds need not be proved directly. It may be inferred by the jury from other facts proved. It is not necessary to prove that the defendants came together and actually agreed in terms to have the unlawful purpose, and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same so as to complete it, with a view to the attainment of that same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object. If, therefore, one concurs in a conspiracy, no proof of agreement to concur is necessary in order to make him guilty. His participation in the conspiracy may be established without showing his name or giving his description."

The question is also discussed in 12 C. J. 632 *et seq.*, it being stated, page 634, that—

"In the reception of circumstantial evidence great latitude must be allowed. The jury should have before them and are entitled to consider every fact which has a bearing on and a tendency to prove the ultimate fact in issue and which will enable them to come to a satisfactory conclusion. The government has the right to show the whole history of the conspiracy from its commencement to its conclusion. And it is no objection that the evidence covers a great many transactions and extends over a long period of time, that it may show another crime, that the acts, evidence to show which is offered, occurred some time before the alleged formation of the conspiracy, provided, however, that the facts shown have some bearing on and tendency to prove the ultimate fact at issue. But much discretion is left to the trial court in a case depending on circumstantial evidence, and its ruling will be sustained if the testimony which is admitted tends even remotely to establish the ultimate fact. However, this latitude will not be extended so as to embrace collateral facts not pertinent or relevant to the matter in issue."

Also, see *Chisler v. Randall,* 124 Kan. 278, 259 Pac. 687, and *Harvey v. Tucker,* 136 Kan. 61, 12 P. 2d 847, as bearing on the matter.

In our opinion the above evidence was sufficient as against a demurrer and required that the matter be submitted to the jury, and the court did not err in overruling the demurrer.

Error is assigned in allowing certain evidence to be introduced over defendant's objection. One witness was permitted to testify that at one of the meetings when Cavender was present, one Kinsley, once a member of the state barber board, had said that they, evidently meaning persons present at the meeting, were proceeding in the wrong manner and there was a better way than doing the way some of them seemed to think they ought to do. What Kinsley or anyone else thought ought to be done was not shown. This evidence was properly admitted under the authorities above cited. The other evidence objected to pertained to what was said and done when two men went to plaintiff's house and told him defendant Wilson wanted to see him at Cavender's shop, and that he refused to go. One or possibly two of these witnesses said they wanted to talk prices. We are of the opinion that this evidence was properly admitted, but in any event it had little or nothing to do with the final outcome. Assuming it should not have been admitted, there is no showing of prejudice.

During the course of the trial it developed that defendant's counsel had a transcript of the testimony taken at the Holton hearing, and plaintiff's counsel asked for it to use it in cross-examination of defendant Remmele. The court ruled they might do so. Error is assigned on the court's ruling. There is no showing that it was used by plaintiff's counsel, and whether the court's ruling was right or wrong did not affect the result.

Error is also assigned because the court refused to give eleven requested instructions, although in the brief the argument is confined to only three. One directed a verdict in favor of the defendant Cavender and another a verdict in favor of the other defendants. They were properly refused. The other was that if the jury found the defendant guilty of violating Rule 7, it should return a verdict in favor of defendants. The court gave instructions, of which no complaint is made, touching the board's power to make rules and regulations, including the one pertinent here, and that a violation thereof constituted a misdemeanor, and that in event the board, in good faith, and carrying out the duties imposed upon it, caused a prosecution of plaintiff, he could not recover. These instructions were more favorable to the defendants than the one requested, and the failure to give the requested instructions was not error.

Complaint is made that the court refused to set aside the answer to a special question:

"If you answer question 1 in the affirmative, state what was done in furtherance of said conspiracy by each of the conspirators named in answer 2. A. Prosper Wilson, James W. Cavender: instigators and promoters. Paul Remmele, Milo C. Stivers: unjustly revoked plaintiff's license as a barber."

There is no showing that when the verdict and answers were returned the defendants requested the answer be made any more definite. It is clear to us that the answer intended to mean and did mean that Wilson and Cavender proposed the matter and that Remmele and Stivers carried it out. There was evidence which warranted the jury in so answering.

The general verdict fixed plaintiff's damages at $2,500. In answer to a special question, the jury allowed the plaintiff damages as follows: Loss of business $700; loss of place of business $350 and exemplary damages $1,450. When the motion for a new trial was decided, the trial court found that the item of $350 was unsupported by the evidence and that the item of $700 was excessive and should be reduced to $110, and that the item of $1,450 exemplary damages was not excessive and should stand, and judgment was rendered for $1,560. The error assigned is that amount allowed for actual damages is insufficient to support the judgment for exemplary damages, and it is argued that the act of the court in reducing the allowance for actual damages shows that the verdict was influenced by passion and prejudice. It must be borne in mind that the $350 item was set aside because of failure of evidence to sustain it.

It requires no citation of authority that before exemplary or punitive damages may be awarded there must be actual damages and a right of recovery therefor established. That test has been met here. In *Titus v. Corkins*, 21 Kan. 722, Brewer, J., stated the distinction between actual and punitive damages, and said:

"But punitive damages mean more than compensation; they imply punishment, and are to deter the wrong-doer, as well as compensate the injured." (p. 723.)

In *Cady v. Case*, 45 Kan. 733, 26 Pac. 448, the syllabus reads:

"The cases of *Malone v. Murphy*, 2 Kan. 250; *Wiley v. Keokuk*, 6 id. 94, and other similar decisions in this court, holding that, whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy, the law allows the jury to give what is called exemplary or vindictive damages, followed."

The question was again presented in *Stalker v. Drake,* 91 Kan. 142, 136 Pac. 912, where it was said:

"Such damages are allowable not because of any special merit in the plaintiff's case, but are imposed by way of punishing the defendant for malicious vindictive or a willful and wanton invasion of the plaintiff's rights, the purpose being to restrain him and deter others from the commission of like wrongs. Such damages are only given where malice, fraud or a willful and wanton disregard of the rights of others enter into the case." (p. 150.)

And see *Roseberry v. Scott,* 120 Kan. 576, 244 Pac. 1063, where the last two mentioned cases are cited, and also *Cheesman v. Felt,* 92 Kan. 688, 693, 142 Pac. 285, where the question is discussed, and a number of our cases are cited.

In the case at bar, the jury, in answer to one of the special questions, found that the members of the state barber board acted with malice, corruption and oppression in revoking plaintiff's barber certificate, and there was evidence which warranted the finding. In 8 R. C. L. 680 it is said:

"It is difficult to lay down any rule by which to test the question of excess in a verdict for punitive or exemplary damages. At common law the amount was left almost entirely to the jury, and the courts generally refused to grant a new trial on the ground that the award was excessive, and would do so only in a glaring case of outrageous damages, and which all mankind at first blush must think so. It is now generally held, however, that the jury is not at liberty, unrestrained, to award by way of punitive damages any amount, regardless of how large it may be. While their verdict will not be set aside unless it is so large as to satisfy the court that it was not the result of an honest exercise of judgment, an award of exemplary damages is subject to revision by the court to the same extent as awards of compensatory damages, and will be set aside if it is grossly excessive or appears to be the result of passion or prejudice or improper sympathy. The court will not interfere except in extreme cases, however, and where it appears that an injustice has been done, and, perhaps, will proceed with more caution in such a case than where only compensatory damages are involved."

We have reviewed the evidence from which it appears that a determined effort was made to compel plaintiff to agree to a certain schedule of prices, and upon his refusal to agree thereto he was criminally prosecuted and civilly deprived of his right to carry on his trade. The fact that his certificate or license was later restored lessened his actual damage, but that does not excuse the wrongful acts of the defendants. In our judgment, the amount of punitive damages allowed was not so large that we can say it was excessive.

In support of various assignments, defendants argue that the state

barber board is a creature of statute, charged with the making and enforcing of certain rules and regulations, and that in so doing it is not a judicial tribunal governed by technical rules applicable to law courts, and that in the absence of fraud, corruption or oppression its findings are conclusive, to all of which we agree, but that does not mean that the members of any such board—here the barber board—to force in line one who does not agree with his fellow workers as to the value of services, may adopt measures which, although performed under the forms of law, are conceived in iniquity, and be relieved from the consequences flowing from their unlawful acts. Possibly different minds might come to different conclusions from the evidence, much of which favorable to the defendants it has not been necessary to mention, but the matter has been fully and fairly presented to a jury, which resolved the question in favor of the plaintiff.

No error appearing, the judgment of the trial court is affirmed.