No. 33,378

THE FIRST NATIONAL BANK OF LEWIS, *Appellant,* v. CHARLES N. STRAWN and GEORGE STRAWN, *Appellees.*

(67 P. 2d 589)

Opinion filed May 8, 1937.

A. L. Moffat, of Kinsley, for the appellant.
*John A. Etling* and *W. N. Beezley,* both of Kinsley, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The plaintiff bank brought this action in the usual and ordinary way on two notes against the two makers thereof, being son and father. The indebtedness to the bank was entirely that of the son. The only defense made was by the father, although

the son was duly served and was a witness in the case. The answer of the father was on two separate grounds: duress and the illegality of the consideration, alleging in detail the threat made by the officers and agents of the bank to prosecute the son for making false representations to the bank and obtaining money from the bank by means thereof, and to send the son to the penitentiary therefor unless the father would sign the note, and promising, if the father would sign the note, to abstain from criminal prosecution of the son and to conceal and say nothing about the crime. The reply consisted of a general and several special denials of the allegations of the answer. Later the answer was amended by setting forth the nature of the misrepresentations made by the son to the bank and admitting in the answer that such representations were false.

The matter was tried by a jury and the burden of proof was on the defendant. A stipulation was made as to the date and amount of the first note signed by the son and father on March 9, 1931, the date of the several renewals thereof, the payments of interest by the father, the execution of a note for unpaid interest and renewals thereof. At the close of defendant's evidence the plaintiff demurred thereto on the ground that the evidence of the defendant was insufficient to constitute a defense to plaintiff's causes of action or to support either of the alleged defenses set forth in the answer. The trial court sustained the demurrer as to the defense of duress and overruled it as to the defense of illegality of consideration. The plaintiff then introduced its evidence and moved the court for a peremptory instruction, which was refused, and the matter was submitted to the jury with instructions. The jury being unable to agree was discharged, and plaintiff appeals from the ruling of the trial court on the demurrer to defendant's evidence.

The question involved in the appeal, as stated by appellant, is "whether or not the evidence of the defendant George Strawn (the father) is sufficient to take the case to the jury upon the alleged defense, of illegality of consideration for the note, upon the proposition of an express contract to abstain from criminally prosecuting Chas. N. Strawn (the son) and an implied contract to conceal the evidence of the crime."

Appellant urges that practically all of defendant's evidence was on the defense of duress and very little on the defense of illegality of consideration. There is no distinct separation of the evidence on the two different defenses. In some statements of the witnesses part

of it might go toward proving either or both defenses. The following is one of such statements containing evidence on both defenses in the same sentence:

"That he is acquainted with G. S. White, cashier of the First National Bank of Lewis. That G. S. White came to his place some time about the month of March, 1931. . . . He said that he had a note and wanted me to sign the note for Charles, and he [defendant] said, 'I hesitated to go, I would not go,' and he said if I didn't he had mortgaged property, some way or other, and he would send him to the penitentiary. If I signed the note he would drop the thing and would not bother it any more. He said if I would go ahead and sign the note, the bank would drop this business, and if I didn't he would send him to the penitentiary."

After a few intervening questions and answers the record contains the following:

"Q. After Mr. White made that statement to you, did you agree to sign a note? A. Yes, sir."

There was an objection made to this last question as calling for a conclusion of the witness, and it was overruled by the court. The next succeeding question and answer were as follows:

"Q. Was there any other consideration for you signing the note other than what you have related? A. No, sir. I was not indebted to the bank. I don't remember the amount of the note, I think it was $3,461. I signed the note in the bank."

Another question and answer along the same line is:

"Q. And what did he say the bank would do if you signed the note? A. Would drop the thing."

Other statements of the defendant are as follows:

"I never asked the bank to extend credit to my son. . . . I executed another renewal note dated November 27, 1934, and also an interest note for $563.11.

"Q. Why did you execute those notes? A. Well, because I knew what White had told me all the time, he told me that day.

"I knew nothing about this until it came up at Dodge City with Mr. Van Riper. It was quite a bit after I had seen Mr. Van Riper before Mr. White came out to my place. . . . We signed a contract there, we had a contract.

"Q. So you signed a note and then you requested a contract, did you, in addition to the note? A. Yes, sir.

"Q. What kind of a contract did you ask for? A. Well, Charles asked for five years to pay it, so then Mr. White didn't want Charles to sign the note, he wanted me to sign it in place of him and I would not do it. We both signed it that day. I said get the contract, and we all signed it. Mr. White drew the contract, I suppose, he fetched it in there, after Charles and myself talked about wanting a contract."

The following is a copy of the contract:

"This agreement entered into this 9th day of March, 1931, between The First National Bank, Lewis, Kansas, and George Strawn, Lewis, Kansas. That, providing George Strawn signs note of Chas. N. Strawn payable to the First National Bank, Lewis, Kans., as surety, for Chas. N. Strawn, that the First National Bank, Lewis, Kansas, will not demand settlement, or force settlement from George Strawn, for a period of five years from date. Principal of note being $3,416.87. GEO. STRAWN,

FIRST NATIONAL BANK, Lewis, Kansas,

By G. S. WHITE, Cashier.

Witness A. E. JARVIS."

· Other statements are as follows:

"I talked with Mr. Jarvis about signing a note for Charles. . . . They said to go ahead and sign the note, they would see I never was bothered Uncle George Jarvis said . . . Mr. Jarvis said we would fix up any kind of a contract before we went to town."

The son Charles testified as to the conversation at the bank just before the note was signed, and among other things said "something was said about not to worry, would not be bothered. Mr. White said that and he believes Mr. Jarvis spoke something relative to that. He believes he made the suggestion that they make some writing that they would not bother him." This witness later stated after the answer was amended that the statement he made to the bank to procure a loan was false in that he told Mr. White, and it appeared in the written statement he signed, that he owed his father $1,000, whereas he owed him at that time $4,400.

This was some of the evidence of defendant which might be considered as supporting the defense of illegality of consideration, and the question is, was it sufficient when separated, as best it can be, from that in support of the defense of duress to go to the jury over a demurrer thereto in support of the allegations of illegality of consideration? The cross-examination, as usual, brought out variations or doubts as to dates and other matters, but those matters go to the jury as questions of credibility rather than consideration under a demurrer to the evidence.

Appellant cites a number of cases and texts as to the presumption of the legality of contracts and the burden of proof being on those contending otherwise. The trial court put the burden of proof on the defendant in this case because of that presumption and that would be a heavy weight in the balance as to the evidence pro and con, but on demurrer to the evidence the rule is more liberal as to

the force and effect of such evidence, as was recently held in *Hayes v. Reid*, 145 Kan. 51, 64 P. 2d 19:

"In passing on a demurrer to evidence the court does not pass on conflicting evidence and the evidence must be weighed in the light most favorable to the party which adduced it." (Syl. ¶ 1.)

Appellant insists that the evidence of defendant in support of the illegality of consideration was not substantial, clear and convincing, to the effect that there was an agreement to conceal the felony and to abstain from prosecution. This, we think, is a little stronger than most of the requirements on this subject. *Jackman v. Development Co.*, 106 Kan. 59, 187 Pac. 258, holds that the evidence should be clear and satisfactory, but absolute certainty is not required. In *Hoover and Hutchinson v. Wood*, 1 Kan. 509, the trouble was that the positive and distinct averments were lacking.

*Milling Co. v. Fruitiger*, 113 Kan. 432, 215 Pac. 286, is cited by appellant and it is much like the case at bar except that the ground for prosecution there was admitted embezzlement. The employers did not threaten prosecution nor report the shortage to the bondsman and did not ask the defendant to become surety on the note for the loss. There appears to have been some testimony to the effect that if defendant Fruitiger would sign a note as surety for the shortage plaintiff would refrain from prosecution. The jury so found, but upon appeal after judgment had been rendered for defendant this court in consideration of all the testimony found that "in none of it is there substantial support for the contention that the consideration of the notes was tainted by an illegal agreement." The court further found that the motive that actuated the employer in not calling the bonding company was not for the benefit or gain of plaintiff but was the humane and charitable one of protecting the employee's family.

Under the defendant's testimony in the case at bar the cashier of the bank was the active one in insisting upon the father signing the note and the son of the president of the bank was active, according to his own testimony, in trying to collect this sum for the bank and in telling the son and his father that something must be done.

In the cases of *Western Paving Co. v. Sifers*, 126 Kan. 460, 268 Pac. 803, and *Jones v. Prickett*, 135 Kan. 640, 11 P. 2d 1008, duress was the defense, and since that element has been eliminated for the present at least in this case by the sustaining of the demurrer to the evidence in support of that defense, they do not directly assist in the consideration of the question of the illegality of the consideration

for the notes. The motion which was later made to direct a verdict is equivalent to a demurrer to the evidence and is to be considered and decided along very similar lines, as was held in *Sullivan v. Phenix Ins. Co.*, 34 Kan. 170, 8 Pac. 112:

"Where a party fails to show something essential to the maintenance of the action or defense, and where there are no disputed facts for the jury to pass upon, the court may direct a verdict, but if the evidence fairly tends to establish the plaintiff's cause of action, the court cannot withdraw the case from the jury and direct a verdict in favor of the defendant, but must leave the weight and credit of the testimony with the jury." (Syl. ¶ 4.).

The basis for the averment and proof of the consideration of such notes being illegal is G. S. 1935, 21-714:

"Every person having a knowledge of the actual commission of any offense punishable by death, or by confinement and hard labor, who shall take any money or property of another, or any gratuity or reward, or any promise, undertaking or engagement therefor, upon agreement or understanding, express or implied, to compound or conceal such crime, or to abstain from any prosecution thereof, or withhold any evidence thereof, shall upon conviction be punished," etc.

It is said in 13 C. J. 453:

"To render an agreement illegal as an agreement to compound a crime, it is essential that there shall be an agreement not to prosecute, although the agreement may be either express or implied."

In *Friend v. Miller*, 52 Kan. 139, 34 Pac. 397, it was held:

"An agreement to stifle a prosecution or to withhold testimony therein, and thus obstruct the course of public justice, or to compound a felony, is absolutely void, and no recovery can be had upon a promissory note given in consideration of such an agreement." (Syl. ¶ 2.)

We think there was sufficient evidence offered by the defendant, when separated from that of duress and threats, to justify the trial court in overruling the demurrer to the evidence of defendant as to the illegality of the consideration of the notes in the way of promises and agreements, to the effect that if the father would sign the note the bank would drop the matter of prosecution of the son.

As to the second specification of error in overruling plaintiff's motion for a directed verdict, we think the trial court was right in so ruling. There was quite a conflict in the evidence, but the credibility thereof was properly for the jury if there was sufficient evidence to support the averment of the defendant and to overcome the statutory presumption of consideration. We think there was and that there was no error in these rulings of the trial court.

The judgment is affirmed.