No. 33,925

IDA P. MOSLEY et al., *Appellants*, v. OLGA UNRUH et al. (CHRISTIAN H. GOERING), *Appellees*.

(95 P. 2d 537)

Opinion filed November 10, 1939.

*Maurice P. O'Keefe, Karl W. Root,* both of Atchison, *James L. Galle* and *R. O. Mason,* both of McPherson, for the appellants.

*Ezra Branine, Alden E. Branine, Fred Ice,* all of Newton, *J. Rodney Rhoades* and *George R. Lehmberg,* both of McPherson, for appellee C. H. Goering.

The opinion of the court was delivered by

Hoch, J.: This was an action to recover under the provisions of the Kansas securities act (blue-sky law), which makes voidable at the option of the purchaser the sale of securities made in violation of the act. The appeal is from an order sustaining a motion for a directed verdict in favor of one of the defendants. The question presented is whether there was substantial evidence sufficient to require submission of the case to the jury.

The statute involved is section 17-1240, G. S. 1935. That section reads in part as follows: ‹

"Every sale or contract for sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser; and the person making such sale or contract for sale and every director, officer or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller in person or in open court of the securities sold or of the contract made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fee in any action or tender under this section."

Sale of the stock without first obtaining registration is the violation here alleged. The plaintiffs, T. J. Mosley, Ida P. Mosley and Lola J. Wells, are brother and sisters. The defendants were F. H. Unruh, I. W. Siegel, the wives of Unruh and Siegel, Christian H. Goering and the Cusco Oil and Refining Company. The case against Unruh and Siegel was submitted to the jury, a verdict rendered, and no appeal taken. Goering alone, of the defendants, is brought here by the appeal.

Unruh and Siegel had purchased from a trustee in bankruptcy an oil refinery located at Chase, Kan., for approximately $8,000. Of that amount they borrowed about $7,000 from the Citizens State Bank at Moundridge, of which C. H. Goering, the appellee, was president. For the purpose of operating the refinery the Cusco Oil and Refining Company was organized, with Siegel and Unruh and their wives as the principal stockholders. Goering was one of the incorporators and received one share of stock, without consideration. The corporation took over the refinery, and a bill of sale and chattel mortgage to all the assets of the corporation were given to the bank as security for the loan.

It was alleged that Unruh and Siegel planned and conspired to sell stock in the company in violation of the blue-sky law, and that Goering aided and assisted them as their agent in carrying out such unlawful scheme and conspiracy. It was further alleged that Goering permitted himself to be made a dummy director of the corporation in pursuance of the unlawful scheme, and as such director acted in subservience to Siegel and Unruh "with the exception of the instances as hereinafter set forth, in which he had a personal interest, either individually or for and on behalf of the Citizens State Bank, of Moundridge, Kan., of which he was at all times hereinafter mentioned an officer and director, in which instances the said defendant, Christian H. Goering, acted for his own personal and individual benefit and interest and for the benefit and interest of the said The Citizens State Bank of Moundridge, Kansas."

The plaintiffs, the Mosleys, had been the owners of a large farm in Dickinson county which they had traded for stock in the company. Subsequently, for reasons not here material, they brought this action to set aside the sale and recover under section 17-1240.

The question being here upon defendants' motion for a directed verdict, the evidence must be considered in the light most favorable to the plaintiffs. Every reasonable inference which can be drawn from the evidence favorable to the plaintiffs must be indulged against the defendants. The same rule applies as in the case of demurrer. (*First Nat'l Bank v. Strawn*, 145 Kan. 934, 67 P. 2d 589.)

Mosley testified that he became acquainted with Unruh in October, 1935, and that a Mr. Klugman was with Unruh the first time he saw him, and about that time they talked about making a trade of their land for an interest in an oil refinery; a day or two later they were taken out to Chase to see the refinery. When they returned from Chase they decided they did not want to make the trade, but a day or two later Klugman and Unruh's son came to their place and wanted to open up the deal again and asked to take them to Wichita to talk the matter over; that on the way to Wichita they were taken to Moundridge, and the car stopped in front of the bank there; that he had not known for sure that there was a bank at Moundridge; that when the car drove up in front of the bank they were told they could go in and would be introduced to the banker and could find out something from him about Unruh's reputation; that he and his sister went in and were introduced to Goering and went back to a private room, where a conversation took place; that they told Goer-

ing they were about to make a deal to trade their land for an interest in the refinery and asked him what he thought about the deal and about the integrity of Unruh; that Goering said he did not know very much about Unruh since he (Unruh) went to Wichita, but that when he lived around Moundridge, which was his home, he was always a straight, nice boy, or something of the kind; that Goering said that if the refinery was run right it would make money and he wished he owned it, and suggested that if the Mosleys made a deal they should make it as they would a horse trade or anything of that sort and get all they could for their land. Mosley testified that he did not believe anything was said about the stock of the corporation. Ida P. Mosley gave substantially the same testimony. Following the interview with Goering the parties went on to Wichita, where the deal was consummated. The Mosleys signed a deed to their farm, the name of the grantee being left in blank, and Unruh took the deed to Moundridge and told Goering that he would like to insert Goering's name as grantee, that he did not want to put it in his own name because of possible litigation. Goering said that he did not want it in his name as he might have some trouble with his income tax. Unruh then suggested that it be put in the name of D. J. Goering, a relative of the appellee and cashier of the bank, and Goering said that was for Unruh and "Dave" to say, as it did not make any difference to him. Unruh then said that they would put it in D. J. Goering's name and if he did not like it he could deed it back afterwards. Thereupon D. J. Goering's name was inserted as grantee without his knowledge, and Goering, the appellee, acknowledged the deed and affixed his notarial seal. Goering testified that he did not know whether he or Unruh wrote in D. J. Goering's name. Subsequently D. J. Goering, upon hearing of the transaction, made objection, and Goering prepared a deed from D. J. Goering to Mrs. Unruh which D. J. Goering signed and acknowledged. Subsequently, the farm was sold and about $6,500 deposited in the Goering bank from the proceeds. Of this amount, $3,850 was used to pay a note owed by Unruh and Siegel to the bank and about $1,830 credited on a note of the Cusco Oil and Refining Company to the bank. Goering testified that at the time the Mosley deed was made he was not a director of the company, but he subsequently became a director. After the company was organized and took over all the properties the two Goerings advanced considerable of their own money as working capital—for the purchase of crude oil and other-

wise operating the refinery, and received a contract under which they were to receive two and one-half cents per barrel on oil purchased by the refinery, as a bonus in addition to interest on the loan.

In the interview with the Mosleys at the bank nothing was said about the loans that had been made by the bank to Unruh and Siegel or about the organization of the Cusco Oil and Refining Company or about the personal loans of the Goerings or the bonus contract, nor does it appear from the record that the Mosleys at any time prior to completing the trade had any knowledge that Goering was in any way financially interested in the refinery or in the transaction of Unruh and Siegel.

Other testimony relating to attendant facts and circumstances need not be reviewed.

Did Unruh and Siegel enter into a scheme and conspiracy to sell unregistered stock, and did Goering aid and assist them in carrying out their unlawful purpose? On the first issue, as to Unruh and Siegel, the question went to the jury, conviction was had and no appeal was taken. One of the contentions of appellee is that since it was not charged or shown that Goering in any way negotiated or took part directly in the sale of the stock, recovery could not be had against him under section 14-1240 unless there was evidence to show that he had participated or aided in making the sale as a "director, officer or agent" of the seller; that he was not a director or officer and that there was no evidence which could be held to establish agency. If, however, there was evidence that the conspiracy had been entered into and that he aided and assisted in consummating it, it makes little difference whether he be considered an agent of Unruh and Siegel. He would become, under the law, a coconspirator and principal, and under the well-established doctrine that an act of one of the conspirators is an act of all he would become in effect a seller within the meaning of the statute. To give the statute a narrower interpretation would open an easy path to its nullification.

Appellees contend that the facts and circumstances shown, as they relate to Goering, are just as consistent with a lawful purpose as with an unlawful one, and that therefore the motion for a directed verdict was properly sustained. While the language used by some authorities and in some cases from other states would seem to suggest that those seeking to prove conspiracy by circumstantial evidence have a heavier burden than that which exists in other cases,

the decisions of this and many other courts do not support that view. It is true that the facts and circumstances must be clearly shown and be of such a character that a jury could reasonably conclude therefrom that a conspiracy had been entered into. But if the chain of circumstances is such that ordinary men of sound mind might reasonably believe from it that a conspiracy existed, the issue is a question of fact for the jury. (15 C. J. S. 1043, 1044, 1047; 11 Am. Jur. 585; *Stoner v. Wilson,* 140 Kan. 383, 36 P. 2d 999; *Rickel v. Coöperative Exchange,* 113 Kan. 592, 215 Pac. 1015; *Chisler v. Randall,* 124 Kan. 278, 259 Pac. 687; *Hutson v. Imperial Royalties Co.,* 134 Kan. 378, 5 P. 2d 825; *Eustler v. Hughes,* 267 Ky. 200, 101 S. W. 2d 917.) Also, facts and circumstances subsequent to the act complained of may be shown for the purpose of establishing the existence of a conspiracy prior thereto. (15 C. J. S. 1043-1045; *Hutson v. Imperial Royalties Co.,* supra, pp. 388, 389.)

Another contention of appellee is that even though it be shown that Goering aided and participated in the sale of the stock to the Mosleys, the transaction would be exempt under a provision of the blue-sky law which exempts "isolated sales" from the operation of the act. But allegations of successive sales by Unruh and Siegel were made. Testimony in support of such allegations was offered, and if Goering did aid and assist in consummating an unlawful scheme he would not be immune simply because he was directly connected with only one transaction. Whether exemption on the ground of an "isolated sale" was claimed in defense of Unruh and Siegel the record does not disclose.

Goering was present and became a stockholder at the organization of the company. He subsequently became a director. The bank of which he was president had a mortgage on the refinery and all other property of the company at the time the conversation with the Mosleys took place. He made large personal loans to Unruh and Siegel and was to receive a substantial bonus under a contract made in connection with the loans. He acknowledged the deeds and helped prepare one of them under the circumstances and in the manner heretofore stated. While specific reference may not have been made to the corporation stock in the interview with the Mosleys, he knew that the refinery property had been taken over by the company and that if the Mosleys secured an interest in the refinery it would be done by acquisition of the company's stock.

Ours is not the function of a jury to weigh the evidence and pass

judgment upon the appellee, but we cannot say after a careful review of the record and under the legal principles heretofore stated that there was not sufficient evidence to require submitting the question to the jury.

The motion for a directed verdict in favor of Goering should be overruled and a new trial granted. It is so ordered.